**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee/Cross-
      Appellant,

v.

ELEUTERIO GARCIA,

      Defendant-Appellant/Cross-
      Appellee.

Nos. 98-2012 and 98-2031

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-96-004 MV)

---

John L. Sullivan, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, LLP, Santa Fe, New Mexico (Mark H. Donatelli, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, LLP, Santa Fe, New Mexico and Michael W. Lilley of Las Cruces, New Mexico, with him on the briefs), for Defendant-Appellant/Cross-Appellee.

Richard A. Friedman, Attorney, Appellate Section of Criminal Division of the Department of Justice, Washington, D.C. (John J. Kelly, United States Attorney for the District of New Mexico and Mick I.R. Gutierrez, Assistant United States Attorney for the District of New Mexico with him on the brief) for Plaintiff-Appellee/Cross-Appellant.

---

Before **PORFILIO, BALDOCK** and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

This appeal involves the defendant's challenge to the district court's denial of a motion for judgment of acquittal based on an entrapment defense and denial of motions for a new trial, as well as the government's cross-appeals on several sentencing issues. We affirm the district court's judgment, except for the district court's two-level reduction based on the minor participant provision of the Sentencing Guidelines, on which we reverse and remand.

On December 14, 1995, Defendant-Appellant/Cross-Appellee Eleuterio Garcia was arrested for trafficking cocaine, and was later charged with possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2. At trial, his sole defense was that paid government informant Saul Horcasitas entrapped him. The jury returned a guilty verdict, and Garcia's post-trial motions for judgment of acquittal and for a new trial were denied.

At sentencing, the district court adjusted downward Garcia's base offense level by six levels, pursuant to the safety valve, acceptance of responsibility, and minor participant provisions of the Sentencing Guidelines. The district court then departed downward an additional seven levels, finding Garcia's commission of the crime to be a single act of aberrant behavior. In total, Garcia's offense level dropped from twenty-eight to fifteen, which, when combined with his criminal history category of I, established a guideline imprisonment range of eighteen to

twenty-four months.  Garcia was sentenced to eighteen months in prison.  The government cross-appeals the downward departure, as well as the acceptance of responsibility and minor participant adjustments.

I.      Entrapment as a Matter of Law

Garcia argues that he was entrapped as a matter of law, and that the district court thereby erred in denying his motion for judgment of acquittal.  The denial of a motion for judgment of acquittal based on entrapment is reviewed de novo, viewing all the evidence and drawing all reasonable inferences in the light most favorable to the government.  See United States v. Lampley, 127 F.3d 1231, 1242 (10th Cir. 1997), cert. denied, 118 S. Ct. 1098 (1998).

"Entrapment exists as a matter of law only if the evidence of entrapment is uncontradicted.  When a jury has found that no entrapment existed, we can alter that finding on legal grounds only 'where the holding should be made without choosing between conflicting witnesses nor judging credibility. . . .  Accordingly, we review only whether sufficient evidence exists to support the jury's verdict.'"  United States v. Martinez, 979 F.2d 1424, 1429 (10th Cir. 1992) (quoting United States v. Dozal-Bencomo, 952 F.2d 1246, 1250 (10th Cir. 1991)) (citations omitted).  Once the defense of entrapment is properly raised, the government has the burden of proving that the defendant was predisposed to commit the crime.

United States v. Duran, 133 F.3d 1324, 1327 n.2 (10th Cir. 1998). The "entrapment defense has two parts: (1) the lawfulness of the government's conduct, and (2) the defendant's predisposition to engage in the criminal activity." Lampley, 127 F.3d at 1242. Garcia's claim of entrapment as a matter of law focuses on the second element, predisposition. Garcia contends that the government failed in its burden to prove that he was predisposed to commit a criminal act prior to being approached by the government. "Predisposition to commit a criminal act may be shown by evidence of similar prior illegal acts or it may be inferred from defendant's desire for profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity." Duran, 133 F.3d at 1335 (internal quotations and citations omitted). As a result, although Jacobson v. United States, 503 U.S. 540, 549 (1992), requires that the defendant's predisposition be viewed at the time the government agent first approached the defendant, inferences about that predisposition may be drawn from events occurring after the two parties came into contact. See Duran, 133 F.3d at 1336 (finding sufficient evidence of predisposition where defendant, inter alia, "bragged" to the government informant "about being able to obtain drugs"); United States v. Mendoza-Salgado, 964 F.2d 993, 1003 (10th Cir. 1992) ("[Defendant's] solicitous telephone discussions with [the government agent]

-4-

regarding defendant's ability to supply cocaine, his express interest in handling future drug purchases and his attendance at the preliminary meeting between [his supplier] and agents exemplifies a profound eagerness to engage in the illegal activity.").

We find there is sufficient evidence to prove that Garcia was predisposed to distribute narcotics. The government's paid informant, Saul Horcasitas, testified that three weeks after he moved into the trailer next door to Garcia, it was Garcia who first suggested to Horcasitas that he should sell cocaine. Additionally, Garcia's vocabulary and manner of dealing with Horcasitas demonstrates knowledge and experience in illicit drug trades. During two taped telephone conversations between Garcia and Horcasitas, Garcia demonstrated knowledge of the drug trade when he understood Horcasitas' use of code words. Horcasitas talked to Garcia in code, using phrases like "animals" (cocaine), "bundles" (kilograms), and "papers" (money), and Garcia had no problem understanding Horcasitas' lingo. In fact, Garcia even used code words, stating in one conversation that he wanted to look "at the papers to see if I like them, to see if they work on the roof." Police Officer Mike Mulliniks testified that such code is used by people "familiar with dealing in drugs," and it is not unreasonable for a jury to find that someone who understands such code is predisposed to deal drugs.

See Mendoza-Salgado, 964 F.2d at 1003 ("'code words' to describe drugs and related matter further exemplifies . . . understanding of the narcotics trade").

Other evidence admitted at trial sufficiently establishes Garcia's predisposition. DEA Agent James Baker testified that the amount of cocaine involved in the transaction, 2.987 kilograms, is "consistent with more sophisticated operators." Moreover, Garcia had a conversation with Horcasitas in which Garcia refused to transport the cocaine from Las Cruces, New Mexico to Hatch, New Mexico. Garcia's refusal to transport the cocaine to Hatch from Las Cruces reasonably could be interpreted as evincing a sophisticated understanding of the risks of transporting drugs, because Border Patrol checkpoints are positioned between the two cities. Garcia also knew to ensure his security by insisting that the drug deal occur on his home turf; that the transaction be completed quickly at the time Garcia, not the buyers, demanded; and that the locations for the drug deal frequently change. Finally, Garcia was apparently experienced enough to maintain a cool, calm, and collected businesslike demeanor throughout the entire drug transaction.

Given this evidence, and all reasonable inferences which can be drawn in the government's favor, the district court did not abuse its discretion in denying the motion for judgment of acquittal. A jury reasonably could find that the nearly

three kilogram cocaine deal involving Garcia resembled a sophisticated drug transaction that someone predisposed to drug trafficking would commit.

II.     Motion for a New Trial

Garcia filed a motion for a new trial on the ground that the verdict was against the weight of the evidence with regard to his sole defense of entrapment. The district court denied the motion, and Garcia appeals, arguing that the district court totally failed to weigh any evidence.  A district court's denial of a new trial based on the weight of the evidence is reviewed for abuse of discretion.  United States v. Evans, 42 F.3d 586, 593 (10th Cir. 1994).  Though the district court's reasoning could have been more explicit, the district court did not abuse its discretion.

A motion for new trial should be granted if, "after weighing the evidence and the credibility of the witnesses, the court determines that 'the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred.'"  United States v. Gabaldon, 91 F.3d 91, 93-94 (10th Cir. 1996) (quoting Evans, 42 F.3d at 593).   In its Memorandum Opinion and Order denying the motion, the district court stated that it "considered the briefs, testimony of witnesses and [was] otherwise fully informed," and it then concluded that the motion for new trial was "not well taken."  The court laid out in detail the

testimony of Horcasitas, Agent Baker, and Officer Mulliniks, and ultimately found this testimony to be "directly relevant to the question of inducement and contradictory to Mr. Garcia's testimony." The court concluded that "[b]ecause of this conflict the Court cannot say that Mr. Garcia was entrapped as a matter of law." Although its reasoning was not explicit, we believe the district court weighed the evidence and considered the credibility of all the witnesses. The court's complete description of the evidence pertaining to the entrapment defense, its express consideration of "the briefs, testimony of witnesses and being otherwise fully informed," combined with the court's explicit rejection of the new trial motion establish that the court weighed the evidence, and found it not to support a motion for new trial. Accordingly, Garcia's appeal on this matter fails.

III.    Failure to Hold Hearing Regarding Potential Jury Misconduct

Garcia also asserts that the district court erred in failing to conduct a hearing regarding potential jury misconduct. The denial of a motion for new trial based on juror misconduct is reviewed under the abuse of discretion standard. See United States v. Davis, 60 F.3d 1479, 1482 (10th Cir. 1995).

Garcia alleges that several jurors saw him arrive at the courthouse in a recent model pickup truck and that they improperly inferred that to afford such an expensive vehicle, he must have been a drug dealer. Garcia argues that the

jurors' observations of him arriving at the courthouse in a luxurious automobile constitutes external information triggering a presumption of prejudice under Remmer v. United States, 347 U.S. 227 (1954).

Remmer dealt with a third party offer of a bribe to the jury foreman in exchange for a favorable verdict. The Supreme Court held that the trial court erred in not conducting a hearing with the participation of the defendant to determine the effect of the offered bribe on the jury, and stated: "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." Id. at 229. Remmer's presumption of prejudice does not apply to Garcia because the jurors' alleged observations of Garcia and his pickup truck do not constitute direct or indirect private "communication, contact, or tampering." Seeing Garcia arrive at court in his truck is not extraneous evidence, in the same way that it is not extraneous evidence when a juror observes the defendant walking down the corridor of the courthouse between trial dates, or sees the defendant at the grocery store. "To hold otherwise would require a Remmer hearing based on each of the multiple ordinary incidental contacts between non-sequestered jurors and virtually any other person during the course of a trial." United States v. Brooks, 161 F.3d 1240, 1246 (10th Cir. 1998) (holding Remmer inapplicable where juror spoke

with security officers during lunch break on first day of trial, without evidence that their conversations were "about the matter pending before the jury"). Remmer and its applications in this Circuit thus foreclose us from adopting Garcia's arguments. We further observe that, in any event, photographs were introduced in evidence showing Garcia in this truck. The Remmer presumption is not applicable and the district court acted within its discretion in refusing to hold a hearing on the matter.

IV.    The Government's Cross-Appeals from the Sentence

The government raises three issues on cross-appeal. The government contends that the district court erred in adjusting Garcia's sentence downward based on his acceptance of responsibility and minor participant status in the offense. The government also argues that the district court erred in granting a downward departure for aberrational behavior. We hold that the district court erred only in its minor participant downward adjustment; therefore, we affirm in part and reverse in part.

A.  Acceptance of responsibility

At sentencing, the district court granted Garcia a two point reduction for acceptance of responsibility. The court made a factual finding that:

The defendant meets the criteria of Section 3E1.1(a) and will receive a two (2) level reduction for acceptance of responsibility . . . . The defendant admitted his involvement in the offense since his initial arrest and throughout the trial. Further, the defendant has given the Government all the information he knows about the offense. The Court finds it was appropriate for the defendant having presented an entrapment defense which admitted the underlying facts, to receive full credit for acceptance of responsibility.

On cross-appeal, the government argues that the district court erred as a matter of law in applying the acceptance-of-responsibility credit under U.S.S.G. § 3E1.1 because Garcia went to trial, asserted an entrapment defense, and thereby, according to the government, refused to acknowledge that he willfully engaged in drug trafficking. The issue before us is whether asserting an entrapment defense at trial bars receipt of an acceptance-of-responsibility reduction as a matter of law. The circuits appear split on this matter,[1] although only the Sixth Circuit has

---

[1] The Third, Sixth, Ninth, and Eleventh Circuits have concluded that the entrapment defense and the acceptance of responsibility reduction are not necessarily incompatible. See United States v. Demes, 941 F.2d 220, 222 (3d Cir. 1991) ("[I]t is conceivable to hypothesize a case in which a plea of entrapment would not be inconsistent with the acceptance of responsibility . . . ."); United States v. Fleener, 900 F.2d 914, 918 (6th Cir. 1990) ("[W]e find that the district court did not err in considering a reduction for acceptance of responsibility even though [the defendant] raised an entrapment defense at trial. Such a defense is no less inconsistent with the Guidelines provision than is a plea of not guilty, which does not raise an absolute bar to a court's consideration."); United States v. Ing, 70 F.3d 553, 556 (9th Cir. 1995) ("The assertion of an entrapment defense is not necessarily incompatible with acceptance of responsibility."); United States v. Davis, 36 F.3d 1424, 1435 (9th Cir. 1994) ("[T]he district court could not have found that [the defendant] had not accepted responsibility solely because he presented an entrapment defense at trial."); Joiner v. United States, 103 F.3d 961,

(continued...)

[1](...continued)

963 (11th Cir.) ("[The defendant] would not have been barred as a matter of law from receiving an adjustment merely because he asserted an entrapment defense at trial, even though some courts have viewed the assertion of an entrapment defense as the virtual antithesis of acceptance of responsibility. Rather, as with cases involving any other defense, whether a defendant has accepted responsibility is a fact-based question which requires the district court to carefully review all of the evidence bearing on a particular defendant's contrition.") (citation omitted), cert. denied, 520 U.S. 1246 (1997). The First Circuit seems to have reached the same conclusion. See United States v. Ellis, 168 F.3d 558, 564 (1st Cir. 1999) ("In some cases, defenses relating to intent may yet qualify for the acceptance of responsibility reduction.") (citing Fleener, 900 F.2d at 918).

On the other hand, the Fifth and Eighth Circuits have held that an entrapment defense and a § 3E1.1 reduction are necessarily incompatible. See United States v. Brace, 145 F.3d 247, 265 (5th Cir.) (en banc) ("[A]n entrapment defense is a challenge to criminal intent and thus to culpability. Accordingly, this is not one of those 'rare situations', contemplated by the guideline commentary, in which a defendant may proceed to trial and still satisfy § 3E1.1(a)."), cert denied, 119 S.Ct. 426 (1998); United States v. Chevre, 146 F.3d 622, 625 (8th Cir. 1998) ("We believe that '[w]here a defendant persists in asserting entrapment, she cannot also claim acceptance of responsibility.'") (quoting United States v. Simpson, 995 F.2d 109, 112 (7th Cir. 1993)).

The D.C. Circuit comes very close to holding that the entrapment defense is incompatible with acceptance of responsibility, but it has left the door just slightly ajar on that issue. See United States v. Kirkland, 104 F.3d 1403, 1406 (D.C. Cir.) ("It may be that a situation could be presented in which an entrapment defense is not logically inconsistent with a finding of a defendant's acceptance of responsibility, even though we doubt it (that three of our sister circuits seem to think so is sufficient reason to be somewhat cautious), but certainly defense counsel's argument before the district court did not raise it."), cert. denied, 520 U.S. 1246 (1997).

The Seventh Circuit appears to be split internally. Compare United States v. Corral-Ibarra, 25 F.3d 430, 440 (7th Cir. 1994) (finding that an entrapment defense if pleaded in good faith "may possibly qualify" for a § 3E1.1 reduction, but in such a case "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct"), with United States v. Rector, 111 F.3d 503, 508 (7th Cir. 1997) ("[T]he adjustment [for

(continued...)

addressed the issue in a case with the same posture as here: an appeal from a sentencing court's <u>grant</u> of the reduction. <u>See</u> <u>United States v. Fleener</u>, 900 F.2d 914 (6th Cir. 1990) (affirming the district court's decision to grant a two-point reduction for acceptance of responsibility because of the defendant's pretrial cooperation with the government on the merits of the offense, notwithstanding the defendant's assertion at trial of an entrapment defense). Like the Sixth Circuit, we hold that a § 3E1.1 reduction is not per se unavailable just because the defendant chooses to go to trial solely on an entrapment defense.

The entrapment defense is founded upon the rule of statutory construction that prohibits literal interpretation of a statute that produces absurd results. In <u>Sorrells v. United States</u>, 287 U.S. 435 (1932), where the Supreme Court first

---

[1](...continued)
acceptance of responsibility] is rarely available to those who assert entrapment, a defense that by its nature tends to preclude the acceptance of responsibility. Essentially, the problem is that asserting entrapment is a denial rather than an acceptance of responsibility. A defendant asserting such a defense is saying, in effect, 'I did it but it was somebody else's fault that I did it.' That is the antithesis of remorse or acceptance of responsibility."), <u>overruled on other grounds by</u> <u>United States v. Wilson</u>, 169 F.3d 418, 428 n.9 (7th Cir. 1999), <u>cert. denied</u>, No. 98-9497, 1999 WL 350146 (U.S. June 21, 1999), <u>and</u> <u>United States v. Simpson</u>, 995 F.2d 109, 112 (7th Cir. 1993) ("Where a defendant persists in asserting entrapment, she cannot also claim acceptance of responsibility."), <u>and</u> <u>United States v. Emenogha</u>, 1 F.3d 473, 482 (7th Cir. 1993) (same).

The Second Circuit has noted, but has yet to address the issue. <u>See</u> <u>United States v. Rosa</u>, 17 F.3d 1531, 1552 (2d Cir. 1994) (expressly refusing to determine "whether a defendant who claims 'sentencing entrapment' may ever receive the two-point reduction").

recognized the entrapment defense, the government's argument against

recognition of the entrapment defense was tied to the "letter of the statute" under

which the defendant was prosecuted.      Id. at 446.  The Supreme Court, however,

rejected a literal reading of the criminal statute, and explained:

> Literal interpretation of statutes at the expense of the reason of the
> law and producing absurd consequences or flagrant injustice has frequently
> been condemned. . . .
> . . .
> We think that this established principle of construction is applicable
> here.  We are unable to conclude that it was the intention of the Congress
> in enacting this statute that its processes of detection and enforcement
> should be abused by the instigation by government officials of an act on
> the part of persons otherwise innocent in order to lure them to its
> commission and to punish them.  We are not forced by the letter to do
> violence to the spirit and purpose of the statute.

Id. at 446-48.   Thus, the entrapment defense is a creature of statutory

construction that concedes that the defendant's conduct satisfies the essential

factual elements of guilt, but nonetheless refuses to apply the statute to an

entrapped defendant to avoid creating an absurd result.      See also  Jacobson , 503 at

553 (reaffirming quoted passage from      Sorrells ); Sherman v. United States   , 356

U.S. 369, 372 (1958) ("Congress could not have intended that its statutes were to

be enforced by tempting innocent persons into violations.");      United States v.

Russell , 411 U.S. 423, 428 (1973) ("[In    Sorrells , ] Mr. Chief Justice Hughes,

speaking for the Court, held that as a matter of statutory construction the defense

of entrapment should have been available to the defendant.");      id. at 433-34

-14-

("Critics of the rule laid down in Sorrells and Sherman have suggested that its basis in the implied intent of Congress is largely fictitious . . . . Arguments such as these, while not devoid of appeal, have been twice previously made to this Court, and twice rejected by it, first in Sorrells and then in Sherman."); Ronald J. Allen et al., Constitutional Criminal Procedure 980 (3d ed. 1995) ("[T]he Court has consistently reaffirmed that the key to the federal entrapment defense is the absence of predisposition on the part of the defendant and that the defense exists as a matter of statutory construction.").

Given that the entrapment defense emanates from such a rule of statutory construction, we believe that a sentencing court may apply an acceptance-of-responsibility reduction to a defendant who asserts the entrapment defense. The commentary to § 3E1.1 states that conviction by trial "does not automatically preclude a defendant from consideration for such a reduction." U.S.S.G. § 3E1.1, cmt. (n.2).

> In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt ( e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct ). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

Id. (emphasis added).  As the long line of Supreme Court entrapment cases show, the entrapment defense is just such a "challenge to the applicability of a statute" to the defendant's conduct.  The defendant, when defending at trial based only on the entrapment defense, is essentially saying:  "I am factually guilty, but it was the government that induced commission of the crime and planted the criminal intent.  I thereby was entrapped.  Therefore, Congress did not intend for this criminal statute to apply to my conduct."  Thus, the entrapment defense is one of those "rare situations" contemplated by the Sentencing Guidelines in which a defendant may go to trial and still receive an acceptance of responsibility reduction.

We are mindful of this court's prior statement in United States v. Hansen, 964 F.2d 1017, 1021 (10th Cir. 1992), that it is "difficult for this Court to envision how the defendant argues that he affirmatively accepted responsibility for his criminal action when throughout the proceedings he maintained that his criminal action was not his fault, but rather, it was the result of government inducement."  Nothing we say today is inconsistent with this statement.  We hold only that raising the entrapment defense does not necessarily foreclose the possibility of receiving a reduction for acceptance of responsibility, but that does not mean that the simple assertion of the entrapment defense coupled with acknowledgment of the underlying criminal activity automatically entitles a

-16-

defendant to a two-point acceptance of responsibility reduction.  See also United States v. Hoenscheidt, 7 F.3d 1528, 1532 (10th Cir. 1993) (no error where sentencing court acknowledged the entrapment defense "does not necessarily bar" a § 3E1.1 reduction); United States v. Wallace, No. 97-6190, 1998 WL 13548, at *5 (10th Cir. Jan. 16, 1998) (unpublished) ("[I]t is possible that a failed entrapment defense could coexist with an acceptance of responsibility adjustment."), cert. denied, 118 S. Ct. 1855 (1998); United States v. Ortegon-Antillon, No. 94-2139, 1995 WL 511137, at *1 (10th Cir. Aug. 30, 1995) (unpublished) ("A defendant who forces the government to prove its case at trial will only rarely warrant a reduction for acceptance of responsibility.  One such rare occasion may arise when a defendant who otherwise expresses remorse, contrition, or acknowledgment of wrongdoing nonetheless pleads not guilty because of entrapment.") (citation omitted).  A defendant will need to evidence acceptance of responsibility, primarily through pre-trial statements and conduct, before an acceptance of responsibility reduction would be warranted.  See U.S.S.G. § 3E1.1, cmt. 2.

Some courts have suggested that the entrapment defense and U.S.S.G. § 3E1.1 are incompatible because the entrapment defense challenges the factual element of intent.  See United States v. Brace, 145 F.3d 247, 265 (5th Cir.) (en banc), cert. denied, 119 S.Ct. 426 (1998); United States v. Kirkland, 104 F.3d

1403, 1405 (D.C. Cir.), cert. denied, 520 U.S. 1246 (1997). Entrapment is indeed "intertwined" with the issue of intent, United States v. Fadel, 844 F.2d 1425, 1430 (10th Cir. 1988), because the jury is asked to consider "whether that intent was the result of Government inducement," Mathews v. United States, 485 U.S. 58, 65 (1988). However, asking whether the defendant's intent was the result of government inducement does not challenge the factual element of intent. As the Supreme Court has clearly stated, "[entrapment] is rooted . . . in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense, but was induced to commit them by the Government." United States v. Russell, 411 U.S. 423, 435 (1973) (emphasis added); see also, Ronald J. Allen et al, Constitutional Criminal Procedure 999 (3d ed. 1995) ("Typically defendants claiming entrapment do not challenge the prosecutor's proof of the elements of the offense."). In this case, Garcia was charged with possession of cocaine with intent to distribute. "To support a conviction of possession with intent to distribute, the evidence must prove beyond a reasonable doubt the following elements: (1) the defendant knowingly possessed the illegal drug; and (2) the defendant possessed the drug with the specific intent to distribute it." United States v. Carter, 130 F.3d 1432, 1440 (10th Cir. 1997) (internal quotations omitted), cert. denied, 118 S. Ct. 1856 (1998). The entrapment defense challenges neither of these elements. Garcia

admits that he knowingly possessed cocaine and that he specifically intended to distribute the cocaine. Instead, Garcia asserted the entrapment defense, which functions as an "origin-of-intent" defense, conceding that he had the requisite criminal intent when the crime was committed, but claiming that the requisite criminal intent was planted by the government. If it is proven that the government "originate[d] a criminal design, implant[ed] in an innocent person's mind the disposition to commit a criminal act, and then induce[d] commission of the crime," Jacobson , 503 U.S. at 548, then pursuant to a rule of statutory construction, the criminal statute does not apply to the defendant, and he or she should therefore not be punished. [2]

Even if the entrapment defense were viewed as challenging the factual element of intent, under the law of this circuit, we would still affirm the district court's acceptance-of-responsibility downward adjustment. In United States v. Gauvin, 173 F.3d 798 (10th Cir. 1999), the defendant was charged with assault with a dangerous weapon and assault on a federal officer. The defendant "went to

---

[2] The record belies any suggestion that Garcia "admit[ted] and expresse[d] remorse" only after conviction. U.S.S.G. § 3E1.1, comment. (n.2). The sentencing court found that Garcia "admitted his involvement in the offense since his initial arrest." Likewise, at the evidentiary hearing and sentencing below, the judge added: "I think Mr. Garcia is entitled to acceptance of responsibility by virtue of the fact that he has at all times admitted the acts that he has been accused of by the Government in this case . . . Mr. Garcia has at all times admitted what he did in this case. He admitted it prior to trial."

trial only to contest the legal element of intent. . . . [The defendant] disputed whether his acknowledged factual state of mind met the legal criteria of intent to harm or cause apprehension." Id. at 806. He argued at trial, to no avail, that "he did not intend, while drunk and scared, to cause injury to others. [He also] contended that his drunkenness rendered him incapable of forming the requisite mens rea." Id. The defendant was convicted, but the district court granted him a § 3E1.1 reduction. We affirmed, reasoning that the defendant's "defense-- essentially a challenge to the applicability of the statute to his conduct, see U.S.S.G. § 3E1.1, cmt. n.2-- does not as a matter of law preclude application of the guideline." Id. If an intoxication defense challenging the mens rea of a crime does not necessarily foreclose an acceptance-of-responsibility reduction, then neither does an entrapment defense. Accordingly, the district court's ruling was consistent with the law and it committed no error in granting Garcia a § 3E1.1 downward adjustment.

B. Minor participant

The trial court granted Garcia a two level reduction from the base offense level because he was a "minor participant." The court explained:

[T]he defendant is viewed as a minor participant. The defendant was recruited by a paid informant who befriended the defendant and his pregnant daughter for several months with the goal to ensnare him in this

illegal activity and who preyed on the defendant's sympathy for the paid informant's seemingly impoverished lifestyle.

A trial court's determination as to whether a defendant was a minimal or minor participant is a factual finding that we review only for clear error, "giving due deference to the court's application of the sentencing guidelines to the facts." United States v. James, 157 F.3d 1218, 1219 (10th Cir. 1998). This court "will not reverse the district court unless the court's findings are without factual support in the record, or if after reviewing the evidence we are left with the definite and firm conviction that a mistake has been made." United States v. Gault, 141 F.3d 1399, 1404 (10th Cir.), cert. denied, 119 S. Ct. 253 (1998). After reviewing the evidence, we are indeed left with a definite and firm conviction that a mistake has been made.

Section 3B1.2 states that the trial court should decrease the defendant's offense level by two levels "[i]f the defendant was a minor participant in any criminal activity." "[M]inor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. (n.3). "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted," but does not include an undercover law enforcement officer. U.S.S.G. § 3B1.1, cmt. (n.1). The three "participants" in Garcia's crime were Garcia and the two men who delivered the cocaine to Garcia, Rafael Chavez and

Dagoberto Torrez, in order for him to sell it to the government's undercover buyers. It would be a mistake to conclude both that Garcia is less culpable than Chavez and Torrez, and that Garcia's role was minimal. Chavez and Torrez were the suppliers of the cocaine, and Garcia was the seller who took the active step of contacting the suppliers to arrange the drug deal. We find it clear error to conclude that a seller of nearly three kilograms of cocaine who helped orchestrate its sale by contacting suppliers was a "minor participant." The fact that the government "preyed" on Garcia's sympathy does not diminish his substantial role in the cocaine transactions at issue.[3]

### C. Aberrant behavior

At sentencing, the district court granted a downward departure to Garcia because his crime of conviction was a single act of aberrant behavior. The district court explained:

---

[3] Garcia contends that he was a "minor participant" because it was the government and one of the suppliers that "set the price of the cocaine, not Garcia; that Garcia did not arrange the location; that Garcia did not supply the cocaine, did not know the purity of the drugs, and did not have any control over the amount of the drugs that were purchased; and that Garcia did not stand to receive any financial gain from the transaction and got involved only because of the friendship he felt toward Horcasitas." However, this argument, assuming it to be true, fails to rebut the facts outlined above, which clearly establish that Garcia's role was nevertheless not minimal. See U.S.S.G. § 3B1.2, cmt. (n.3). While Garcia may not have run every facet of the drug deal, his role within it was still substantial.

The Court finds that this defendant has a minimal criminal history. The defendant has numerous letters of support from the community attesting to his honesty and integrity in the manner which he conducted his business in Las Cruces, New Mexico for many years. Several letters confirmed the defendant's sympathy for people in need. The paid informant used this to entice this previously law-abiding member of the community. The Court will depart seven (7) levels, from a base offense level of twenty-two (22), to a base offense level of fifteen (15). A base offense level of fifteen (15) and a criminal history category of I establishes a guideline imprisonment range of eighteen (18) to twenty-four (24) months.

"The aberrance of a criminal act is an encouraged factor for departure." United States v. Talk, 158 F.3d 1064, 1072 (10th Cir. 1998), cert. denied, 119 S. Ct. 1079 (1999). "Under our case law, the aberrant nature of a criminal defendant's offense conduct may properly be considered as a mitigating factor in a downward departure decision." United States v. Jones, 158 F.3d 492, 500 (10th Cir. 1998). The "determination of whether an individual defendant's offense conduct is aberrational, like the decision to depart, requires consideration of unique factors not readily susceptible of useful generalization. The district court is in the better position to determine whether the defendant's offense conduct is out of character for that individual. Accordingly, the district court's resolution of this largely factual question is due substantial deference." Id.

The government argues that in order for the aberrational behavior departure to apply, the offense must be "spontaneous, without substantial planning, and be completely aberrant from defendant's background and personality." As a result,

-23-

the government asserts, Garcia's "carefully planned" cocaine transaction cannot be deemed aberrational. However, this circuit has never held that application of the aberrant behavior downward departure requires the crime at issue to have been spontaneous. This court focuses "our departure analysis not on the number of discrete acts undertaken by the defendant, but on '[t]he aberrational character of her conduct.'" Id. (quoting United States v. Pena, 930 F.2d 1486, 1495 (10th Cir. 1991)). In Jones, this court upheld a downward departure based on the aberrance of a criminal act where a defendant was convicted of possession of a firearm by a prohibited person and providing false information to obtain a firearm. In Pena, a downward departure due to the aberrational nature of the defendant's conduct was affirmed where the defendant was convicted of driving a car containing drugs across the border. Neither of the facts in Jones nor Pena evince spontaneity – what the government posits as a prerequisite to the aberrational behavior factor for a downward departure.

The government also argues on appeal that the jury's rejection of the entrapment defense necessarily amounts to a finding that Garcia was predisposed to commit the offense, and that such predisposition precludes the aberrational behavior downward departure. This argument, however, was not raised below and is unpersuasive, in any event, since the jury, in rejecting the entrapment defense,

-24-

did not have to find Garcia predisposed; rather, the jury, in rejecting the entrapment defense, could simply have found no inducement by the government.

As a result, the district court's downward departure based on aberrant behavior is affirmed.

## CONCLUSION

We AFFIRM the district court's denial of Garcia's motion for judgment of acquittal and motions for a new trial. We also AFFIRM the district court's application of the acceptance-of-responsibility downward adjustment and aberrant behavior downward departure. The district court's application of the "minor participant" provision is REVERSED, and we REMAND for resentencing in accordance with this opinion.