**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 12 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THEOMAS RHODES,

Defendant-Appellant.

No. 99-2124
(D. C. No. CR-97-CR-638-JC)
(Dist. N. M.)

**ORDER AND JUDGMENT***

Before **BRORBY**, **ANDERSON**, and **HENRY**, Circuit Judges.

After the government charged him with various drug offenses, Theomas Rhodes

pleaded guilty to one count of conspiring to possess with the intent to distribute more than

50 grams of cocaine base, a violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

Subsequently, Mr. Rhodes filed a motion to withdraw his guilty plea. The district court

denied his motion and sentenced him to 210 months' imprisonment.

Mr. Rhodes now appeals the district court's denial of his motion to withdraw his

guilty plea. He also argues that, by making certain remarks at sentencing, the district

---

* This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

court impermissibly chilled his right to present the defense of sentencing entrapment. For the reasons set forth below, we affirm Mr. Rhodes's conviction and sentence.

## I. BACKGROUND

Mr. Rhodes appeared before a magistrate judge on May 14, 1998 to plead guilty to count 1 of the indictment, which charged a violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.[1] During the proceedings, Mr. Rhodes stated that he understood the charge against him and the possible penalties, as summarized by the prosecutor. The prosecutor announced that he and Mr. Rhodes's attorney had agreed that "if Mr. Rhodes tenders his plea of guilty to Count 1 today without a plea agreement, that we will keep open negotiations regarding a possible plea agreement, which the Government provided to the defendant." Rec. vol. VI at 10 (Change of Plea Hr'g, dated May 14, 1998).

The written plea agreement tendered by the prosecutor provided that Mr. Rhodes would plead guilty to count 1 and count 16. The latter count charged Mr. Rhodes with carrying a firearm during and in relation to the conspiracy charged in count 1, a violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. See Rec. vol. 1 doc. 190.

Upon questioning from the magistrate judge, the prosecutor stated that even if no

---

[1] In United States v. Ciapponi, 77 F.3d 1247, 1251 (10th Cir. 1996), we held that "with a defendant's express consent, the broad residuary 'additional duties' clause of the Magistrate's Act[, 28 U.S.C. § 636(b)(3),] authorizes a magistrate judge to conduct a Rule 11 felony plea proceeding, and such does not violate the defendant's constitutional rights."

plea agreement was executed, Mr. Rhodes would not be allowed to withdraw his guilty plea to count 1 of the indictment. Mr. Rhodes indicated that he understood this consequence of his plea.

The prosecutor then summarized the government's evidence in support of its allegations in count 1. He reported that "there was an informal agreement among two or more people to distribute crack cocaine and that at some time during this alleged period—that is, between the spring of 1996 and October 21st of 1997—Mr. Rhodes voluntarily joined that agreement." Id. at 13-14. The prosecutor then addressed the evidence in more specific terms. He described Mr. Rhodes's involvement in telephone calls arranging for the purchase of crack cocaine by an informant and by a codefendant, Mr. Rhodes's delivery of crack cocaine to a confidential informant on two occasions, and his negotiation of a future crack transaction with an undercover officer.

The magistrate judge then asked Mr. Rhodes if he understood the recitation of the evidence:

> Q: (By The Court) Mr. Rhodes, did you understand the explanation made by the assistant United States attorney as to what some of the facts are in this case with respect to Count 1 of the indictment?
>
> A. Yes, sir.
>
> Q: Are those facts true?
>
> A: Yes, sir, most of them.
>
> Q: Did you, between the spring of 1996 and October 21, 1997, agree or

3

> conspire with others to possess with the intention of distributing and did distribute a controlled substance—
>
> Q: Yes, sir.
>
> Q: Just a moment
>
> (Discussion between Court and clerk)
>
> Q: (By The Court)—a controlled substance which was a detectable amount of cocaine base, which is commonly known as crack, in violation of the law? Did you commit that offense?
>
> A: Yes, sir.

Id. at 17. The magistrate then announced that he would receive Mr. Rhodes's guilty plea to count 1 and recommend that the district court accept it.

On June 3, 1998, Mr. Rhodes filed the written plea agreement that the prosecutor had previously tendered to him. Although a plea hearing was scheduled for June 29, 1998, it was continued after Mr. Rhodes filed a motion for a psychological evaluation.

In October 1998, Mr. Rhodes informed the court that he wanted to withdraw his guilty pleas to counts 1 and 16. Nevertheless, in November of that year, Mr. Rhodes's counsel indicated that she was interested in resolving the case by proceeding to sentencing on count 1 only. She proposed that the government dismiss the § 924(c) charge alleged in count 16. After the government rejected that proposal, Mr. Rhodes filed a motion to substitute counsel, and his attorney filed a motion to withdraw. The court granted the motion and appointed new counsel for Mr. Rhodes.

In December 1998, Mr. Rhodes's new counsel filed a motion to withdraw both the

4

May 14, 1998 guilty plea to count 1 and the written plea agreement. After considering the factors set forth in circuit case law, see e.g., United States v. Killingsworth, 117 F.3d 1159, 1161-62 (10th Cir. 1997), the court characterized the question as relatively close but denied the motion. The court reasoned that although Mr. Rhodes had asserted his innocence to count 16, he had not done so as to count 1. It added that his guilty plea to count 1 was clearly knowing and voluntary.

The prosecution subsequently moved to dismiss all counts except count 1. The district court granted the motion, and the case proceeded to sentencing. Mr. Rhodes filed a motion for downward departure, alleging that investigating agents and a confidential informant had entrapped him "into selling quantities in excess of any amounts he had previously sold, and to which he would not normally have had access, but for the investigating agents' insistence that he obtain certain quantities of drugs." Rec. vol. I, doc. 330 at 1. In response, the prosecution objected to the presentence report's recommendation that Mr. Rhodes be awarded a downward adjustment in the offense level for acceptance of responsibility pursuant to USSG § 3E1.1.

At the sentencing hearing, after Mr. Rhodes's attorney mentioned the motion for downward departure, the judge asked if Mr. Rhodes wanted to "stay" with that motion. Rec. vol. IV at 6 (Sentencing Hr'g, dated Mar. 30, 1999). The judge explained, "Your client's looking at 82 months more because of that motion. Do you want to stick with it or not?" Id. After consulting with his client, Mr. Rhodes's attorney announced that he had

elected not to proceed with arguments on sentencing entrapment. The court then accepted the presentence report's recommendation for a three-level downward adjustment in Mr. Rhodes's offense level pursuant to USSG § 3E1.1. It sentenced Mr. Rhodes to 210 months' imprisonment, a figure at the low end of the applicable Guideline range (for an offense level of 35 and a criminal history category III).

## II. DISCUSSION

### A. Motion to Withdraw Guilty Plea

On appeal, Mr. Rhodes advances four challenges to the district court's denial of his motion to withdraw his guilty plea: First, he contends that his guilty plea was not knowing and voluntary because, at the time that the magistrate judge accepted it, he was still concerned that he might be charged with murder if he did not admit the government's allegations in count 1. Second, Mr. Rhodes suggests that the magistrate judge erred in the sequencing of certain inquires during the change of plea proceeding. Third, he maintains that there is insufficient evidence of a factual basis for his plea, as required by Fed. R. Crim. P. 11(f). Finally, he argues that the fact that the government tendered the written plea agreement (providing that Mr. Rhodes would plead guilty to count 1 and count 16) before the plea to count 1 was accepted by the magistrate judge, on May 14, 1998 renders the plea invalid.[2]

---

[2] Although the plea agreement was filed on June 3, 1998, the prosecutor's signature is dated May 14, 1998. See Rec. vol. I, doc. 190, at 10.

Pursuant to Fed. R. Crim. P. 32(e), the district court may allow a defendant to withdraw a guilty plea before sentencing "if the defendant shows any fair and just reason." In deciding whether to allow the withdrawal of a plea, the district court must consider the following factors: (1) whether the defendant has asserted his innocence, (2) whether withdrawal of the plea would prejudice the government, (3) whether the defendant delayed in filing the motion to withdraw, (4) whether withdrawal of the plea would cause inconvenience to the court, (5) whether the defendant received sufficient assistance of counsel in entering the initial plea, (6) whether the plea was knowing and voluntary, and (7) whether withdraw of the plea would result in a waste of judicial resources. See United States v. Jones, 168 F.3d 1217, 1219 (10th Cir.1999); Killingsworth, 117 F.3d at 1161-62.

We review the district court's decision whether to allow withdrawal of the guilty plea for an abuse of discretion. See United States v. Black, 201 F.3d 1296, 1300 (10th Cir. 1999). However, we engage in de novo review of the district court's specific findings as to whether the plea was knowing and voluntary. See id. Upon review of the record, we are not persuaded by any of Mr. Rhodes's challenges to the district court's refusal to allow him to withdraw his plea.

With regard to Mr. Rhodes's alleged concern about possible murder charges, we note that his argument is based on his attorney's assertions that Mr. Rhodes "feels that he was coerced and panicked by misrepresentations that he was a suspect in the homicide

7

case." See Aplt's Br. at 15. In spite of these assertions, the record does not support Mr. Rhodes's contention that the plea was not knowing and voluntary. At the hearing on Mr. Rhodes's motion to withdraw his plea, the government cited correspondence indicating that, prior to the May 14, 1998 plea proceeding, it had informed Mr. Rhodes that it was no longer alleging that the weapon referred to in count 16 was involved in a murder. See Aple Br. at 7 n.6. (citing transcript of Dec. 17, 1998 Hr'g at 45-46). Moreover, Mr. Rhodes has identified no evidence in the record supporting the contention that the government's misrepresentations as to possible murder charges forced him to plead guilty to count 1. See Black, 201 F.3d at 1300 (noting lack of evidence in the record supporting the defendant's contention that his plea was not knowing and voluntary); United States v. Picone, 773 F.2d 224, 226 (8th Cir. 1985) (rejecting allegation that government misconduct led the defendant to plead guilty in light of the defendant's failure to present corroborating evidence of the alleged misconduct).

The record also offers little support for Mr. Rhodes's second challenge—that the magistrate conducted the guilty plea proceedings in an improper sequence. Mr. Rhodes's argument is that "the [magistrate judge] did not request a recital of facts in support of the plea agreement until after Mr. Rhodes's guilty plea had been entered." Aplt's Br. at 20. The transcript of the proceedings belies this assertion. Although the magistrate judge asked Mr. Rhodes how he wished to plead before the prosecutor explained the factual basis for the plea, the magistrate did not formally receive the plea or indicate that he

8

would recommend to the district court that the plea be accepted until after the prosecutor provided the explanation. This sequencing of the procedure comports with Fed. R. Crim. P. 11.

Mr. Rhodes's third contention is also based on a misreading of the record. Here, he relies on the fact that, when asked by the district court if the facts provided by the prosecutor were true, Mr. Rhodes responded, "Yes, sir, most of them." Rec. vol. VI at 17. According to Mr. Rhodes, that arguably ambiguous answer indicates that the proceeding did not comport with Fed. R. Crim. P. 11(f), which provides that the court must determine that there is a factual basis for the defendant's guilty plea. Mr. Rhodes ignores the district judge's follow-up question to his "most of them" answer: whether Mr. Rhodes had agreed or conspired with others to possess with the intent to distribute cocaine during the relevant period. Mr. Rhodes's affirmative response to the district court's inquiry provided the necessary factual basis for the guilty plea pursuant to Rule 11(f). See United States v. Keiswetter, 860 F.2d 992, 996 (10th Cir. 1988) (noting that "Rule 11(f) permits the trial judge to find the factual basis for the plea in anything that appears in the record.") (internal citation and quotation omitted).

Mr. Rhodes's final challenge to the guilty plea is similarly unconvincing. He focuses on the fact that the prosecutor tendered the written plea agreement (resolving count 1 and count 16) prior to the plea proceeding conducted by the magistrate judge. Mr Rhodes suggests that the existence of the written plea agreement somehow rendered the

9

plea to count 1 involuntary. Mr. Rhodes's argument is based on speculation. See Aplt's Br. at 21 (arguing that "[o]verall, the impression of a 'rush to judgment' by a panicked defendant and his counsel, perhaps operating under some sort of ultimatum given by the prosecutor, is underscored") (emphasis added). The absence of evidence supporting Mr. Rhodes's suggestion of an improper inducement to obtain a guilty plea, see Picone, 773 F.2d at 226 (noting defendant's failure to produce evidence of government misconduct), supports the district court's denial of his motion to withdraw his plea.

Accordingly, we conclude that the district court properly concluded that Mr. Rhodes's guilty plea was knowing and voluntary and that the court did not abuse its discretion in denying Mr. Rhodes's motion to withdraw the plea.

B.  Alleged Interference with the Right to Present Defense of Entrapment at Sentencing

Mr. Rhodes also argues that the district court's remarks regarding his motion for downward departure impermissibly chilled his right to assert the defense of sentencing entrapment. As noted above, Mr. Rhodes alleged in the downward departure motion that government agents had entrapped him into selling drugs in excess of amounts that he had previously sold. He requested the district court to apply our decision in United States v. Lacey, 86 F.3d 956, 962-64 (10th Cir. 1996), which concluded that certain drug quantities may be excluded from the calculation of a defendant's sentence if the government obtained evidence relating to those quantities by continuing an investigation in a manner

that "is so shocking, outrageous, and intolerable that it offends 'the universal sense of justice,'" id. at 964 (quoting United States v. Russell, 411 U.S. 423, 432 (1973)).

At sentencing, the district court inquired whether Mr. Rhodes's attorney wanted to "stay" with the downward departure motion, explaining that "[y]our client's looking at 82 months more because of that motion. Do you want to stick with it or not?" See Rec. vol. IV at 6 (Sentencing Hr'g, dated Mar. 30, 1999). Mr. Rhodes now characterizes the district court's comments as an instance of judicial misconduct. He maintains that those comments added uncertainty to the proceedings and suggested that the court had prejudged the issues, therefore chilling his right to assert the entrapment defense and warranting a new sentencing hearing.

As the government explains, the district court was referring to Mr. Rhodes losing the benefit of a reduction in the offense level for acceptance of responsibility. The 82 month figure to which the court referred was derived by comparing the low end of two Guideline sentencing ranges: the range that would apply if Mr. Rhodes received the benefit of a three-level reduction for acceptance of responsibility (210 to 262 months) and the range that would apply if Mr. Rhodes did not receive the reduction. (292 to 365 months).[3]

We agree with Mr. Rhodes's suggestion that the defense of sentencing entrapment, as set forth in Lacey, 86 F.3d at 962-64, is not necessarily inconsistent with a downward

_____

[3] These ranges are computed from a criminal history category of three and an offense level of thirty-five. See USSG, Chapter 5 (Sentencing Table).

11

adjustment in the offense level for an acceptance of responsibility pursuant to USSG § 3E1.1. Citing commentary to the Sentencing Guidelines, we have concluded that "the entrapment defense is one of those rare situations contemplated by the Sentencing Guidelines in which a defendant may go to trial and still receive an acceptance of responsibility reduction." See United States v. Garcia, 182 F.3d 1165, 1173 (10th Cir. 1999) (internal citations and quotations omitted). Applying this reasoning, it follows that a defendant may assert an entrapment defense at sentencing and still receive an acceptance of responsibility adjustment.

Nevertheless, that general principle does not establish that the district court's comment was improper in light of the evidence contained in this record. In other words, as the district court suggested, the arguments advanced by Mr. Rhodes at sentencing regarding entrapment could still have undermined his argument for a downward adjustment for acceptance of responsibility under the facts of this case. See id. (explaining that the court's holding "does not mean that the simple assertion of the entrapment defense coupled with the acknowledgment of the underlying criminal activity automatically entitles a defendant to a two point acceptance of responsibility reduction").

Significantly, Mr. Rhodes does not argue that the district court was incorrect on this record in assessing the inconsistency between the entrapment defense and an acceptance of responsibility. Moreover, even if the district court had assessed the record incorrectly, its comments did not preclude Mr. Rhodes from continuing to assert the

12

entrapment defense, arguing simultaneously for the acceptance of responsibility adjustment, and then challenging any adverse findings on appeal.

Accordingly, we conclude that the district court did not impermissibly chill Mr. Rhodes's right to assert the defense of sentencing entrapment.


## III.  CONCLUSION

For the reasons set forth above, we AFFIRM Mr. Rhodes's conviction and sentence.


Entered for the Court,


Robert H. Henry
United States Circuit Judge