**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 16 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

THOMAS CONNE JAMES,

      Defendant-Appellant,

_____

No. 00-3292

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PAUL EDWARD DAVIS,

      Defendant-Appellant,

_____

No. 00-3344

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SAMUEL JUAN GREEN,

      Defendant-Appellant.

No. 00-3363

**Appeal from the United States District Court
for the District of Kansas
(D.C. Nos. 00-CR-40007-DES,
99-40091-DES, and 00-CR-40018-RDR)**

Melody Evans, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with her on the briefs), Topeka, Kansas, for the appellants.

James E. Flory, Assistant United States Attorney (Jackie N. Williams, United States Attorney, and Nancy Landis Caplinger, Assistant United States Attorney, with him on the brief), Topeka, Kansas, for the appellee.

Before **KELLY**, Circuit Judge, **BRORBY,** Senior Circuit Judge, and **BRISCOE**, Circuit Judge.

**BRISCOE**, Circuit Judge.

Defendants Thomas Conne James, Paul Edward Davis and Samuel Juan Green were separately convicted of possession with intent to distribute and/or distribution of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). In these companion cases, they appeal the district court's denial of their motions for discovery on the issue of whether they were targeted for arrest and federal prosecution because of their race. Davis, the only defendant to go to trial, also argues that Section 841 is facially unconstitutional, that the jury should have been given a lesser included offense instruction, and that he should have received a sentence reduction based on acceptance of responsibility. We have jurisdiction under 28 U.S.C. § 1291 and affirm as to each

2

defendant.

I.

In 1999, the Topeka, Kansas Police Department (TPD) and the Department of Housing and Urban Development (HUD) took part in a joint drug investigation known as the "Washburn Operation." The investigators installed audio and video equipment in a house across from Washburn University and recorded numerous drug transactions between an informant and local drug dealers. The investigation resulted in the arrests of twenty-seven people, including James, Davis and Green. Together with the recent "Pine Ridge" and "Polk Plaza" Operations, this was the third investigation in which TPD and HUD joined forces to target drug dealers in Topeka's public housing projects and public assisted housing.

A federal grand jury separately indicted James, Davis and Green on crack cocaine charges, and the same Assistant Federal Public Defender was appointed to represent all three defendants. She subsequently filed a motion on behalf of each defendant seeking discovery on the issue of whether they were arrested and federally prosecuted because they were black. The motions alleged that TPD and HUD investigators targeted black crack cocaine dealers but ignored white crack cocaine and methamphetamine dealers. The motions also alleged that the United States Attorney's Office for the District of Kansas consistently prosecuted black crack cocaine defendants but referred white crack cocaine and methamphetamine defendants for

3

prosecution in state court, where sentences tended to be lower.

The government opposed the discovery motions, and the district court held a separate evidentiary hearing for each defendant. Davis and James offered essentially the same witnesses and exhibits at their evidentiary hearings. The court denied Davis' motion by published order, United States v. Davis, 194 F.R.D. 688 (D. Kan. 2000) (Davis I), and then denied James' motion for the reasons set forth in that order, ROA Vol. 1, Doc. 36 (No. 00-3292). Another judge conducted Green's hearing, at which Green introduced the complete record from James' hearing and additional exhibits. The court adopted the Davis I opinion by reference and similarly denied Green's motion in a published order, United States v. Green, 108 F. Supp.2d 1169 (D. Kan. 2000).

After the district court denied their discovery motions, James pled guilty to one count of distribution of crack cocaine and Green pled guilty to two counts of possession with intent to distribute crack cocaine, both in violation of 21 U.S.C. § 841(a)(1). Davis, however, pled not guilty to three counts of distribution of crack cocaine within 1,000 feet of a university and two counts of possession with intent to distribute crack cocaine within 1,000 feet of a university, all in violation of 21 U.S.C. §§ 841(a)(1) and 860. Davis later admitted at trial that he possessed and distributed crack cocaine but argued the government entrapped him on the school zone element. At the end of the trial, the district court instructed the jury on the elements of the

4

offenses under Section 860, but refused to give a lesser included instruction under Section 841, which would not include the school zone element. The jury returned a guilty verdict on all five counts. In calculating Davis' sentence, the district court denied his request for an acceptance of responsibility reduction. United States v. Davis, No. 99-40091-DES, 2000 WL 1665261, at *4 (D. Kan. Oct. 16, 2000) (Davis II).

## II.

Each defendant contends the district court erred in denying his selective prosecution discovery motion. The parties agree that the threshold standard for obtaining such discovery is set forth in United States v. Armstrong, 517 U.S. 456 (1996), but they disagree as to the standard of review we should apply on appeal.

This court has not adopted a standard for reviewing a selective prosecution discovery order. The defendants argue the district court's decision should not be given any deference on appeal, and they urge us to follow the Fourth Circuit and adopt the de novo standard. See United States v. Olvis, 97 F.3d 739, 743 (4th Cir. 1996). The government, on the other hand, advocates the abuse of discretion standard. As support, it invokes United States v. Gonzalez-Acosta, 989 F.2d 384, 388 (10th Cir. 1993), for the broad proposition that we review criminal discovery rulings for an abuse of discretion. It also notes we applied this standard to review a selective prosecution discovery order in an unpublished opinion, United States v. McMillan, Nos. 96-1054

5

& 96-1076, 1997 WL 413252, at *2 (10th Cir. July 23, 1997).[1]

We agree with the defendants that a district court's decision to grant or deny a selective prosecution discovery motion is not entitled to any deference on appeal. As the Fourth Circuit has observed, although an appellate court will normally defer to a district court's criminal discovery ruling,

> the Supreme Court emphasized in <u>Armstrong</u> that for a selective prosecution claim, the justifications for a rigorous standard of proof to establish a claim require "a correspondingly rigorous standard for discovery in aid of such a claim." 517 U.S. at [468]. Thus, when we review a district court's discovery order in support of a selective-prosecution claim, we are determining the legal adequacy of the evidence. We review the legal adequacy of evidence de novo.

<u>Olvis</u>, 97 F.3d at 743. We find this reasoning persuasive. Although other circuits have continued to review selective prosecution discovery orders for an abuse of discretion even after <u>Armstrong</u> was decided, <u>see</u>, <u>e.g.</u>, <u>United States v. Jones</u>, 159 F.3d 969, 977 (6th Cir. 1998); <u>United States v. Quinn</u>, 123 F.3d 1415, 1425 (11th Cir. 1997); <u>United States v. Candia-Veleta</u>, 104 F.3d 243, 246 (9th Cir. 1996), we decline to follow those circuits because their decisions lack any analysis of <u>Armstrong</u> with respect to the standard of review and instead simply cite pre-<u>Armstrong</u> case law (or other post-<u>Armstrong</u> cases citing pre-<u>Armstrong</u> case law) in which the abuse of discretion standard was applied. Similarly, we decline to follow our prior application of the

---

[1] "Unpublished orders and judgments of this court are not binding precedents, except under the doctrines of law of the case, res judicata, and collateral estoppel." 10th Cir. R. 36.3.

abuse of discretion standard in <u>McMillan</u> because that non-binding opinion relied solely on <u>United States v. Furman</u>, 31 F.3d 1034, 1037 (10th Cir. 1994), a pre-<u>Armstrong</u> case in which the defendant sought dismissal – rather than discovery – based on selective prosecution.  We therefore review the district court's denial of the defendants' selective prosecution discovery motions de novo.

A defendant who claims he was targeted for prosecution because of race is entitled to discovery on that claim only if he presents "*some evidence tending to show the existence of the essential elements of the [selective prosecution] defense, discriminatory effect and discriminatory intent.*"  <u>Armstrong</u>, 517 U.S. at 468 (internal quotations omitted) (emphasis added).  With the exception of James, the defendants on appeal focus entirely on the investigative aspect of their prosecutions in attempting to show some evidence of discriminatory effect and discriminatory intent.  Specifically, all three defendants assert that TPD and HUD investigators target only black crack cocaine dealers and ignore similarly-situated white crack cocaine dealers.  James additionally claims the U.S. Attorney's Office treats black crack cocaine defendants differently than similarly-situated white methamphetamine defendants.

In light of <u>Armstrong</u>'s seemingly less stringent "some evidence tending to show" standard, the defendants need not establish a prima facie case of selective prosecution to obtain discovery on these issues.  <u>Jones</u>, 159 F.3d at 978; <u>United States v. Bin Laden</u>, 126 F. Supp. 2d 256, 262 & n.12 (S.D.N.Y. 2000); <u>United States v.</u>

7

Tuitt, 68 F. Supp. 2d 4, 14-15 (D. Mass. 1999).  Nevertheless, given the heavy burden that discovery can impose on the government, see Armstrong, 517 U.S. at 468, the showing necessary to obtain discovery for a selective prosecution defense must "itself be a significant barrier to the litigation of insubstantial claims," id. at 464.  Keeping this admonition in mind, we conclude the district court properly denied the defendants' discovery motions because the evidence does not satisfy the threshold discriminatory effect requirement.

To prove discriminatory effect in a race-based selective prosecution claim, a defendant must make a credible showing that a similarly-situated individual of another race could have been prosecuted for the offense for which the defendant was charged, but was not.  Armstrong, 517 U.S. at 465.  If such a claim is based on the investigative phase of the prosecution, however, the defendant must instead make a credible showing that a similarly-situated individual of another race could have been, but was not, arrested or referred for federal prosecution for the offense for which the defendant was arrested and referred.  Jones, 159 F.3d at 977.  The defendant may satisfy the "credible showing" requirement by identifying a similarly-situated individual or through the use of statistical evidence.  Chavez v. Illinois State Police, 251 F.3d 612, 636 (7th Cir. 2001).

The defendants rely primarily on statistics as their evidence which tends to show a discriminatory effect from the alleged targeting of black crack cocaine dealers by

TPD and HUD investigators. Specifically, the defendants note that 100% of the people arrested in the Washburn Operation were black, as were 67% of the people arrested in the Pine Ridge Operation and 93% of the people charged in federal court as a result of the Polk Plaza Operation. They similarly note that 92% of all crack cocaine defendants represented by the Topeka Federal Public Defender's Office since 1998 were black. The defendants compare this data to testimony from a Topeka drug counselor, which they say indicates that of the persons who voluntarily committed themselves for treatment of crack cocaine addiction in 1999, 50% were white and 50% were black, and that there is a high correlation between addiction and trafficking in crack cocaine. To bolster the latter point of the drug counselor's testimony, the defendants point to a study by the United States Sentencing Commission which states that crack cocaine users rely on drug sales to support their habit financially.

Of course, a defendant cannot satisfy the discriminatory effect prong by providing statistical evidence which simply shows that the challenged government action tends to affect one particular group. Rather, the proffered statistics must address the critical issue of whether that particular group was treated differently than a similarly-situated group. Chavez, 251 F.3d at 638. For example, the Armstrong Court concluded that a study which stated that 100% of the 21 U.S.C. §§ 841 and 846 cases handled by the Los Angeles Federal Public Defender's Office in 1991 involved black defendants did not tend to show discriminatory effect because the study failed to

identify non-black persons who could have been prosecuted for those same offenses, but were not. 517 U.S. at 470.

As in <u>Armstrong</u>, the statistical evidence offered here does not tend to show discriminatory effect because the statistics do not suggest that a similarly-situated crack cocaine dealer of another race evaded arrest. Although the evidence seems to indicate that the high percentage of blacks who were arrested for dealing crack cocaine was disproportionate to the roughly equal percentage of whites and blacks who were addicted to – and thus purportedly sold – crack cocaine, we consider these statistics to be unreliable as a matter of law for two reasons.

First, there is no indication that the percentages given by the drug counselor involved persons similarly situated to the defendants. The percentages were based on fifty-eight whites and fifty-six blacks who were voluntarily admitted to the Shawnee County Community Mental Health Center for treatment of cocaine addiction in 1999. The program, however, did not distinguish between crack cocaine and powder cocaine for documentation purposes. Although the drug counselor thought more patients were addicted to crack than powder cocaine, his testimony was not supported by any evidence as to how many whites or blacks comprised this supposed majority group of crack addicts. If the group consisted of sixty people, for instance, it could have included as few as four whites and as many as fifty-six blacks, which is far from the proportionate figure claimed by the defendants. But even assuming that an equal

10

percentage of whites and blacks were admitted for addiction to crack cocaine, and that most of these addicts were also "dealers" because they sold the drug to support their habit, there is no evidence that this equal percentage accurately reflects the percentage of whites and blacks in Topeka who actually deal crack cocaine. The two percentages could vary significantly, such that whites may comprise an equal percentage of crack addicts who seek treatment but at the same time represent a much smaller percentage of all crack users in Topeka. Thus, the defendants' statistical evidence does not tend to show differential treatment of similarly-situated individuals.

Second, there is no indication that the drug counselor's statistics were taken from an adequate sample size. Only 114 people sought voluntary admission for cocaine treatment at Shawnee County Community Mental Health Center in 1999, and the drug counselor did not clarify how many of them were addicted to crack cocaine. Moreover, the defendants did not identify the number of crack cocaine admissions at other treatment centers in Topeka that year. Without these numbers, there is no way to determine whether the sample size "is too small to provide reliable statistical results." Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991).

The defendants also attempt to satisfy the discriminatory effect prong by naming two groups of people who, the defendants argue, were similarly situated but ignored by TPD and HUD investigators. According to the defendants, these individuals were several white crack cocaine dealers in Topeka known to a TPD investigator and three

11

unnamed white individuals who were previously arrested in the Topeka area for distributing cocaine.

After reviewing the record, we agree with the government that the defendants have taken considerable liberty with the evidence in arguing they are similarly situated to these two groups. First, TPD Officer Richard Hundertfund did not, as the defendants claim, testify that he knew of an "awful lot" of white crack cocaine dealers in Topeka. Instead, he simply acknowledged on cross-examination that the TPD previously arrested a white crack cocaine dealer and then answered affirmatively when asked "so there are white folks around town that deal crack cocaine?" ROA Vol. 2, Doc. 32 at 113-14 (No. 00-3292). Officer Hundertfund was not asked whether he actually knew of other white crack cocaine dealers in Topeka, and we do not interpret his testimony to mean that he did. As for the three white people arrested for dealing cocaine, the defendants similarly mischaracterize the evidence in arguing that one of those cases involved crack and powder cocaine (the defendants concede the other two cases involved only powder cocaine). The paralegal assistant who gathered this information admitted she was "not sure" if the charge included crack and simply said "I think it may have been a combination." Id. at 44.

For his individual argument, defendant James attempts to satisfy the discriminatory effect prong by naming white methamphetamine defendants whom he believes federal prosecutors treated differently than similarly-situated black crack

cocaine defendants. Specifically, he argues that the U.S. Attorney's Office consistently chose to prosecute black defendants in cases involving at least five grams of crack cocaine since 1998, but referred sixteen white defendants in cases involving at least five grams of methamphetamine for state prosecution over the same period. Pointing out that a federal conviction involving at least five grams of either crack cocaine or pure methamphetamine triggers a five-year mandatory minimum sentence, see 21 U.S.C. § 841(b)(1)(B), James insists that prosecuting black crack cocaine offenders in federal court while diverting white methamphetamine offenders for prosecution in state court, where sentences tend to be lower, establishes different treatment of similarly-situated defendants.

Although we assume that methamphetamine defendants could be similarly situated to crack cocaine defendants under certain circumstances, the evidence upon which James relies does not tend to show that these two groups are similarly situated by reason of his own "mandatory five-year federal sentence" definition. In particular, James fails to explain whether any of the sixteen cases referred to state court involved pure methamphetamine or a mixture containing methamphetamine. This distinction is important because it takes fifty grams of a mixture containing methamphetamine to trigger the mandatory five-year federal sentence applicable to five grams of pure methamphetamine. 21 U.S.C. §§ 841(b)(1)(B)(viii). The evidence here does not suggest that any case sent to state court involved pure methamphetamine, and the

13

number of grams charged in each of those cases was insufficient to trigger the mandatory five-year federal sentence under the mixture rule. Although two cases seem to satisfy the mixture rule's mandatory sentence requirement because they each involved fifty-five grams, both cases were prosecuted before October 21, 1998 – the date Congress lowered the mandatory sentence threshold for mixtures of methamphetamine from one hundred to fifty grams. See Pub. L. 105-277, 112 Stat. 2681-759 (1998). Therefore, because there is no reason to believe that any of the methamphetamine defendants referred to state court would have received a mandatory five-year federal sentence, James' evidence does not tend to show that those defendants are similarly situated to the crack cocaine cases prosecuted in federal court.

Implicitly acknowledging this problem, James argues that the sixteen cases probably involved at least five grams of pure methamphetamine because a recent study by the United States Sentencing Commission found that most street-level methamphetamine has a high amount of purity. Unfortunately, this is yet another misrepresentation of the evidence. The study acknowledged that the White House Office of National Drug Control Policy had previously described the purity of street-level methamphetamine at approximately 50% or more, but it explained that more recent information suggests that purity levels have dropped to around 30%. ROA Vol. 3, Ex. 433 at 15 n.41 (No. 00-3292). We reject James' argument.

Because the defendants' failure to satisfy the discriminatory effect prong is fatal

14

to their attempt to obtain discovery on their selective prosecution claims, see Armstrong, 517 U.S. at 470, we need not consider whether their evidence tends to show discriminatory intent. The district court properly denied discovery.

## III.

Defendant Davis raises three additional arguments on appeal. He contends (1) that 21 U.S.C. § 841 is unconstitutional on its face; (2) that the jury should have been given a lesser included offense instruction; and (3) that his sentence should have been reduced based on his acceptance of responsibility.

## A.

Davis first argues that the recent decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), rendered 21 U.S.C. § 841 facially unconstitutional. Because he did not raise this argument in the district court, our review is for plain error. United States v. Svacina, 137 F.3d 1179, 1186 (10th Cir. 1998). Under this standard, reversal is warranted only when there is: (1) an error; (2) that is plain or obvious; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Hishaw, 235 F.3d 565, 574 (10th Cir. 2000). However, we apply this rule less rigidly when reviewing a potential constitutional error. United States v. Easter, 981 F.2d 1549, 1557 (10th Cir. 1992).

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

15

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Applying that rule, the Apprendi Court struck down as a violation of the Due Process Clause of the Fourteenth Amendment a New Jersey sentencing scheme which authorized a sentencing enhancement beyond the prescribed statutory maximum if the trial judge found by a preponderance of the evidence that the crime was racially motivated.

The Apprendi decision required this court to reassess our prior interpretation of Section 841, which contains two pertinent subsections. Subsection (a), entitled "Unlawful acts," makes it unlawful for any person to distribute, or possess with intent to distribute, a controlled substance. Subsection (b), entitled "Penalties," sets forth the penalties for violating subsection (a), which are based on the type and quantity of the drug, any previous convictions, and whether death or serious bodily injury resulted from the use of the drug.

For several years, we "interpreted § 841(a) as setting forth the elements of the substantive offenses . . . and § 841(b)(1) as setting forth applicable sentencing ranges based on factors such as the quantity of drugs involved." United States v. Jones, 235 F.3d 1231, 1234 (10th Cir. 2000) (citing pre-Apprendi case law). But after the Supreme Court decided Apprendi, we held that

> the quantity of drugs involved in a violation of § 841 is an essential element of the offense if that fact exposes the defendant to a heightened maximum sentence under § 841(b)(1)(A) or (B). A district court may not impose a

16

sentence in excess of the maximum set forth in 21 U.S.C. § 841(b)(1)(C) unless the benchmark quantity of cocaine base for an enhanced penalty is alleged in the indictment in addition to being submitted to the jury and proven beyond a reasonable doubt.

Jones, 235 F.3d at 1236.

According to Davis, our post-Apprendi analysis of Section 841 represents the wrong approach. Rather than re-interpreting Section 841(b) as setting forth the elements of a drug offense, he argues, we should follow our prior interpretation of Section 841(b) as setting forth only sentencing factors that are to be decided by the district court. Davis relies on our prior interpretation to assert that the statute is unconstitutional under Apprendi because it does not permit the jury to decide facts that could increase the penalty for a conviction beyond the prescribed statutory maximum set forth in 21 U.S.C. § 841(b)(1)(C).

This argument ultimately fails because the Jones court interpreted Section 841(b) as setting forth the elements of a federal drug offense to be decided by a jury, and "[w]e are bound by the precedent of prior panels [of this court] absent en banc reconsideration or a superseding contrary decision by the Supreme Court." In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam). Thus, even if we agreed with Davis, we could not overrule Jones and apply the contrary interpretation he urges on appeal. Further, we note that Jones does not constitute a "new" interpretation of congressional intent. Rather, it represents a return to this court's original

17

understanding, prior to the inception of the federal sentencing guidelines, that Congress intended drug quantity to be an essential element under the enhanced penalty provision of Section 841(b).  See United States v. Crockett, 812 F.2d 626, 628-29 (10th Cir. 1987).  Finally, Section 841(b) does not state whether the court or the jury is to determine drug quantity.  Therefore, if subject to constitutional challenge at all, the statute is not facially unconstitutional, but as in Jones, may be challenged in this regard only as unconstitutionally applied.  Jones, 235 F.3d at 1236-38.

B.

Davis next argues that the district court erred in refusing to instruct the jury on the elements of the lesser included offense of 21 U.S.C. § 841, which excludes the school zone element of 21 U.S.C. § 860.  The decision as to whether there is sufficient evidence to justify a lesser included offense instruction rests within the sound discretion of the district court.  United States v. Hatatley, 130 F.3d 1399, 1403 (10th Cir. 1997).  The district court does not abuse its discretion by refusing to instruct on a lesser included offense if the evidence provides no rational basis upon which the jury could find the defendant guilty of the lesser offense.  Id.

At trial, Davis admitted his involvement in the underlying possession and distribution charges but claimed the government entrapped him into committing those crimes in a school zone – the single element which elevates a Section 841 offense to a Section 860 offense.  Specifically, Davis testified he did not want to sell drugs in that

18

area of Topeka and did so only because the informant insisted that the transactions had to occur at the house which was located across from Washburn University. After learning that the district court intended to instruct the jury under Section 860, Davis asked the court to give a lesser included offense instruction under Section 841. He asserted that this would permit the jury to convict him on the underlying crimes and acquit him on the school zone crimes, in recognition of his testimony and the government's responsibility for luring him to a sting operation that was intentionally set up across from a university. The district court denied Davis' request.

A defendant is entitled to a lesser offense instruction if four conditions are met: (1) there is a proper request; (2) the lesser included defense contains some, but not all, of the elements of the offense charged; (3) the element differentiating the two offenses is a matter in dispute; and (4) a jury could rationally convict on the lesser offense and acquit on the greater offense. United States v. Joe, 831 F.2d 218, 219 (10th Cir. 1987). "Failure to meet any part of the test is fatal for the defendant." Id. According to Davis, he satisfied each of these elements and the jury should have been instructed under Section 841.

The question of whether Davis was entitled to a lesser included offense instruction is controlled by United States v. Martinez, 979 F.2d 1424 (10th Cir. 1992). In Martinez, we held that a defendant who raises an entrapment defense to the charged offense is not entitled to a lesser included offense instruction because the defendant

cannot satisfy the last element of the four-part <u>Joe</u> test. <u>Id.</u> at 1433. As we explained in <u>Martinez</u>, if the jury accepts the entrapment defense, an "acquittal on the charged offense would not have permitted it to consider the lesser offense" because "entrapment is a complete defense." <u>Id.</u> But on the other hand, if "the jury did not accept the entrapment defense, it was bound to convict on the charged offense in light of [the defendant's] admissions." <u>Id.</u> Therefore, the jury could not rationally convict on the lesser offense and still acquit on the greater offense. Based on <u>Martinez</u>, the district court did not abuse its discretion in denying Davis' request for a lesser included offense instruction.

## C.

Davis lastly argues that the district court improperly refused to reduce his sentence pursuant to U.S.S.G. § 3E1.1 for his acceptance of responsibility. The determination of whether a defendant is entitled to such a reduction is a question of fact we review under the clearly erroneous standard. <u>United States v. Day</u>, 223 F.3d 1225, 1230 (10th Cir. 2000).

According to Davis, he should have received a reduced sentence based on acceptance of responsibility because he took the stand and freely admitted to the jury that he possessed and distributed crack cocaine. Section 3E1.1 authorizes a two-point sentence reduction if a defendant clearly demonstrates acceptance of responsibility for his criminal conduct. "This adjustment is not intended to apply to a defendant who

puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, commentary n.2. However, the fact that a defendant is convicted at trial does not automatically preclude such a reduction:

> In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or *a challenge to the applicability of a statute to his conduct*).

Id. (emphasis added)

In United States v. Garcia, 182 F.3d 1165, 1173 (10th Cir. 1999), we concluded that an entrapment defense may present "one of those 'rare situations' contemplated by the Sentencing Guidelines in which a defendant may go to trial and still receive an acceptance of responsibility reduction" because the defense challenges the applicability of a statute to the defendant's conduct. However, we emphasized that our holding in Garcia did "not mean that the simple assertion of the entrapment defense coupled with acknowledgment of the underlying criminal activity automatically entitles a defendant to a two-point acceptance of responsibility reduction." Id. Instead, the defendant must still demonstrate "acceptance of responsibility, primarily though pre-trial statements and conduct, before an acceptance of responsibility reduction would be warranted." Id. at 1174 (citing U.S.S.G. § 3E1.1, commentary n.2).

21

In this case, the district court found that Davis was not entitled to an acceptance of responsibility reduction in part because he "did not confess, cooperate with the police, or engage in conduct that would otherwise demonstrate an acceptance of responsibility prior to trial." Davis II, 2000 WL 1665261, at *4. The court also observed that Davis admitted his involvement only after the government presented its case in chief – during which Davis refused to stipulate to anything and "put the government to the task of proving every element, every fact, every videotape and audiotape, every chemical composition, and every geographic detail." Id. Based on these combined circumstances, the court found that Davis had not shown "a clear acceptance of responsibility for his offenses." Id.

On appeal, Davis maintains that the district court's finding ignores the fact that he had to go to trial to plead entrapment and that the government still had to prove its case. Davis further claims that he did not confess or cooperate with the police prior to trial because he was not asked to do so. Even accepting these arguments at face value, Davis offers no basis for concluding that the district court clearly erred in finding that he did not demonstrate any acceptance of responsibility prior to trial as is necessary for the reduction. The district court properly denied his request for a reduction under U.S.S.G. § 3E1.1.

IV.

We AFFIRM the district court's denial of the defendants' motions for discovery on the issue of selective prosecution. We AFFIRM defendant Davis' conviction and sentence.