**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 7 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN D. WARD,

Defendant - Appellant.

No. 02-3075
(D.C. No. 01-CR-40050-RDR)
(D. Kansas)

**ORDER AND JUDGMENT** *

Before **KELLY** , **McKAY** , and **O'BRIEN** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Following a jury trial, John Ward was convicted of conspiracy to possess more than fifty grams of crack cocaine in violation of 21 U.S.C. § 846. On appeal, he argues that the trial court committed reversible error in (1) permitting an investigating officer (Deputy Phillip Higdon) to testify regarding the credibility of other witnesses, and (2) admitting Rule 404(b) "other acts" evidence regarding Mr. Ward's prior involvement with drugs.

**The District Court's Decision**

At trial, the bulk of the evidence against Mr. Ward took the form of testimony from various coconspirators, most notably Joseph Mulay. Other members of the Mulay family, who were also involved in the drug distribution scheme, testified as well. The prosecution's first witness, however, was Deputy Higdon, the case agent in this matter. During the course of his testimony, Deputy Higdon was asked to give his opinion as to whether Mr. Mulay and the others had been truthful in implicating Mr. Ward. Deputy Higdon stated that, based on his experience in law enforcement, he believed Mr. Mulay as well as the others had ultimately been truthful with him, though their stories had changed over time.

The defense's primary witness was Percy Grant. Mr. Grant–who had no other connection to the people or events of the case–had been jailed briefly with Mr. Mulay and then with Mr. Ward. Mr. Grant contended that he and Mr. Mulay fell into the same group while they were imprisoned together, and that Mr. Mulay

had stated that he intended to pin the crime on Mr. Ward to obtain a reduced sentence. Before Mr. Grant testified, however, Deputy Higdon was asked by the prosecution whether it would have been easy for Mr. Grant and Mr. Ward to fabricate this story while they were imprisoned together. Deputy Higdon opined that it would have been easy for them to do so.

Mr. Ward raised both of his appellate arguments in a motion for new trial. The district court concluded that Deputy Higdon's testimony did violate "the principle that the credibility of witnesses is not generally an appropriate subject for opinion testimony." Feb. 14, 2002 Order at 5 (citing *United States v. Call*, 129 F.3d 1402, 1406 (10th Cir. 1997)). Nevertheless, the district court decided that the error was harmless because other evidence of Mr. Ward's guilt was overwhelming. Order at 6. Further, the district court determined that the evidence regarding Mr. Ward's prior involvement with drugs was either (1) integrally related to the conspiracy such that it was not "other acts" evidence, or (2) relevant to show motive and intent and therefore admissible under 404(b). *Id.* at 9.

**Deputy Higdon's Testimony**

There is some dispute over whether Mr. Ward adequately preserved his objection to Deputy Higdon's testimony. If the objection was not preserved, then it would be incumbent on Mr. Ward to show that there was a plain or obvious

error that affected substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001), *cert. denied*, 534 U.S. 1106 (2002). Alternatively, if the objection was preserved, we would review the district court's decision for abuse of discretion. *See United States v. Howell*, 285 F.3d 1263, 1267 (10th Cir. 2002). In either case, the government can nonetheless prevail by showing that the error was harmless in that it did not affect a substantial right of a party. *United States v. Charley*, 189 F.3d 1251, 1270 (10th Cir. 1999). Because we conclude that any error was harmless, we need not decide the preservation issue.

We do not have difficulty concluding that the district court erred in allowing Deputy Higdon to testify regarding the credibility of other witnesses. *See United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993) (such testimony usurps a critical function of the jury, is not helpful to the jury, and may be more prejudicial than probative). The district court acknowledged this in its own ruling on the motion for a new trial. After carefully reviewing the record and Mr. Ward's arguments on appeal, however, we agree with the district court that the admission of Deputy Higdon's improper testimony did not affect Mr. Ward's substantial rights.

An error affecting a substantial right of a party is an error which either had a substantial influence on the outcome of the trial or inspires grave doubt as to

whether it had such influence. *Charley*, 189 F.3d at 1270. The impact of the error is viewed in light of the record as a whole. *Id.* Here, the credibility of the coconspirator witnesses was certainly critical. Their credibility was thoroughly tested, however, through extensive cross-examination and emphasis on the fact that all of the coconspirator witnesses had a motivation to be untruthful. The district court properly instructed the jury regarding evaluation of coconspirator testimony. In this context, Deputy Higdon's isolated comments, while improper, are of minimal significance in light of the persistent, close scrutiny applied to the coconspirators' credibility.

**Rule 404(b) Evidence**

Mr. Ward additionally argues that the district court erred in admitting "other acts" evidence under Rule 404(b). Regarding the "other acts" evidence, Mr. Ward adequately preserved his objection and we review the decision to admit that evidence for abuse of discretion. *United States v. Wacker*, 72 F.3d 1453, 1469 (10th Cir. 1995). The evidence at issue was (1) the testimony of Tyrone Owens to the effect that Mr. Ward had been his exclusive supplier of crack cocaine for a number of years, (2) testimony regarding other drug trips Mr. Ward made with Joseph Mulay and his relatives, and (3) evidence that Mr. Ward had previously been present during a raid on another crack house. We find no abuse of discretion in the district court's conclusion that Mr. Owens' testimony as well

as the evidence of the prior drug raid was relevant to show intent and motive, and that the evidence of other drug trips was integral to the charged criminal activity. *Id.*, 72 F.3d at 1469 (similar "other acts" evidence admissible to show longstanding involvement in drug trafficking, which was integral to the charged conspiratorial activity and also showed intent and plan).

Accordingly, the judgment of the United States District Court for the District of Kansas is AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

**No. 02-3075, <u>United States v. Ward</u>**

**McKAY**, Circuit Judge, concurring in part and dissenting in part:

While I agree with the majority that the district court did not abuse its discretion in admitting "other acts" evidence under Federal Rule of Evidence 404(b), I cannot agree with the majority's holding that the admission of an investigating officer's testimony regarding the credibility of other witnesses was harmless beyond a reasonable doubt. Therefore, I respectfully dissent. I tire of these cases where the prosecution battles to admit illegal testimony and then turns around to argue harmless error to the appellate court when they succeed in their initial objective.

The prosecution, with full knowledge that it had a case with unreliable witnesses and lacking any physical evidence, purposely set the stage by opening up with a hearsay witness who, relying on his "experience," was vouching for the credibility of several unreliable witnesses. This first witness, Deputy Higdon, set the framework for the entire trial. The effect of this illegal vouching evidence, in addition to framing the entire case, was compounded by the trial court. In effect, by overruling defense counsel's objection, the court endorsed such testimony by a "trained narcotics investigator" as expert testimony in front of the jury further bolstering the impact of the illegal testimony.[1]

---

[1] "Well, I'm going to overrule your objection. I think he's well experienced. Go ahead." <u>See</u> Rec., Vol. 7, at 274-77.

Credibility of the co-conspirators was the central issue at trial. It is certain that Deputy Higdon's testimony was critical in bolstering the inconsistent and unreliable testimony of the Government's other witnesses. There is virtually no physical evidence to tie Defendant to the charged crime. The Government did not recover any drugs from Defendant. The only evidence linking Defendant to the drugs is that of several co-conspirator witnesses 1) who are all family members, 2) who all received plea bargains, and 3) whose testimony consistently improved as the plea deals were offered.

The Government attempted and failed in its attempt to set up a controlled buy with Defendant. The Government's witnesses, on the other hand, were all caught "red-handed." Knowing its case was shaky, the Government used the vouching method to overcome inconsistencies in the witnesses' stories.

"The question is whether, on the whole record . . . the error . . . [is] harmless beyond a reasonable doubt." Rose v. Clark, 478 U.S. 570, 583 (1986) (internal quotations and citations omitted). In order to find Defendant guilty, the jury had to believe the testimony of the co-conspirators. Therefore, in order to arrive at the conclusion that the evidence is overwhelming in this case, we have to rely on the impermissible testimony of the officer vouching for the unreliable witnesses. It is virtually certain that the vouching testimony of Deputy Higdon impermissibly influenced the jury's perception of the co-conspirators' credibility.

This does not even come close to meeting our requirement that the error must be harmless beyond a reasonable doubt.

This case is similar to United States v. Sanchez-Lima where the Ninth Circuit held that the error was not harmless where the jury's verdict necessarily depended on the credibility of the bolstered witness. 161 F.3d 545, 548 (9th Cir. 1998) (prosecution for assault on a federal officer resulting from a border patrol incident). In Sanchez, the trial court improperly allowed the admission of testimony of one federal agent, based on his "training and experience," which bolstered the credibility of another federal agent. Similar to our case, the defendant's theory of the case required the jury to reject the agent's account and believe the opposite.

I cannot hold that the admission of Deputy Higdon's testimony was harmless beyond a reasonable doubt. I would reverse and remand with directions to grant a new trial.