**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 3 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JOSEPH V. MULAY,

     Defendant-Appellant.

No. 02-3060
(D.C. No. 01-CR-40033-01-SAC)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, Circuit Judge, **HOLLOWAY**, Senior Circuit Judge, and
**McWILLIAMS**, Senior Circuit Judge.

---

On May 2, 2001, a search warrant was executed at the residence in Topeka,

Kansas lived in by Joseph Mulay (the defendant), his wife, Jennifer, who was a co-

defendant in this case but who is not involved in this appeal, and their five children.

During the search executed by the Shawnee County Sheriff's Department, 151 grams of

cocaine base, 1.8 kilograms of marijuana, and a firearm were seized. Based thereon, the

defendant and his wife were charged in the United States District Court for the district of

Kansas, in a nine count indictment with various drug related crimes, to which the

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

defendant pleaded not guilty.

On July 26, 2001, the defendant, with retained counsel, changed his plea to one of guilty on Counts 7, 8, and 9 of the indictment. Specifically, the defendant plead guilty to Count 7, possessing, on May 2, 2001, 151 grams of cocaine base with an intent to distribute in violation of 21 U.S.C. § 841; Count 8, possessing, on May 2, 2001, 1.8 kilograms of marijuana with an intent to distribute in violation of 21 U.S.C. §841; and Count 9, possessing, on May 2, 2001, a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)[1]. After a presentence report was prepared and filed, the district court, on February 14, 2002 imposed on the defendant an aggregate sentence of imprisonment of 240 months. The defendant filed a *pro se* notice of appeal on February 22, 2002 and is represented in this appeal by the Kansas Public Defender's Office.

On appeal, counsel raises three issues: (1) Did the district court err in determining that the defendant qualified as a "career offender"? (2) Did the district court err in determining defendant's base offense level based on 1,166.7 grams of cocaine base? and

---

[1]In Count 1, defendant was charged with conspiring "from sometime before the 31st day of January, 2000" to on or about May 2, 2001, with his wife and others to distribute controlled substances. In Count 2, the defendant and his wife were charged with possessing with an intent to distribute on January 31, 2000, a controlled substance. Count 3 charged the Mulays with possession and distribution of a controlled substance on March 8, 2001. Count 4 charged a drug offense occurring on April 18, 2001. Count 5 charged a drug offense occurring on April 19, 2001. And Count 6 charged a drug offense occurring on May 1, 2001.

(3) Was the defendant's plea of guilty made knowingly and voluntarily?

It would appear that none of the issues raised on appeal were raised in the district court. Accordingly, we review the issues raised here for "plain error" only. "Plain error" occurs when there is "(1) an error; (2) that is plain or obvious; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001), *cert. denied*, 122 S.Ct. 908 (2002). A rather stringent standard of review.

## I. Career Offender

USSG § 4B1.1 reads as follows:

> (a) a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The defendant was over 18 years of age and the instant offense is a controlled substance offense. A "crime of violence" is defined in USSG §4B1.2(a) as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or

-3-

extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

In the same connection, it is pertinent to note that in *United States v. Dwyer*, 245 F.3d 1168, 1171 (10th Cir. 2001) we said:

If the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto, and findings by the court.

In connection with the "career offender" issue, one of the prior convictions relied on by the officer who prepared the presentence report was K.S.A. § 21-3419, under which the defendant had been previously convicted. That statute reads as follows:

Criminal Threat. (a) A criminal threat is any threat to:

(1) Commit violence communicated with intent to terrorize another, or to cause the evacuation of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such terror or evacuation;

(2) adulterate or contaminate any food, raw agricultural commodity, beverage, drug, animal feed, plant or public water supply.

Based on the statute above cited, counsel, in this Court, argues that we cannot tell from the record whether that particular conviction of the defendant was based on a threat against a person, or, a threat "against a building, place of assembly or facility of transportation" or even a threat to "contaminate a water or food supply." That argument must fail in light the presentence report. Paragraph 56 of the presentence report reads, in

part, as follows:

> On January 3, 1995, Topeka, Kansas, Police Department Officer D. Searcy responded to the residence of David Wright, in reference to events which had occurred earlier that evening. Wright stated while he was at his cousin's residence, the defendant entered through the back door, and walked into the living room of the home. Wright reported the defendant produced a semi automatic handgun and placed it a few inches from Wright's face. The defendant was yelling and screaming about something having to do with Wright and the defendant's daughter. Wright stated he did not understand what the defendant was referring to, but before he left the residence, the defendant stated, "If you're ever around my daughter, I'll kill you." Officer Searcy also spoke with a witness, Melissa Standley, who related basically the same course of events as did Wright.[2]

As indicated, the defendant made no objections to paragraph 56 of the presentence report. Such being the case, it should be obvious that the conviction here challenged related to a threat against a "person," and not a threat against, for example, a "building."

A "failure to object to a fact in a presentence report, or failure to object at the hearing, acts as an admission of fact." *United States v. Deninno,* 29 F.3d 572, 580 (10th Cir. 1994). The defendant did not object to Paragraph 56 in the presentence report nor at the sentencing hearing. Based on the record before us, it would clearly appear that the prior conviction here involved was indeed a threat against a person. There was no error on this matter.

## II. Relevant Conduct

---

[2]As indicated, the challenged prior conviction was based on the facts set forth in paragraph 56 of the Presentence Report.

Mulay's base offense level was determined by the quantity of cocaine base and marijuana found in his residence at the time it was searched on May 2, 2001 and the quantity of powder cocaine found in Laura Gallegos' (defendant's sister-in-law) vehicle in January 2000, when she was arrested in Guymon, Oklahoma. In connection with the trial that thereafter ensued against one John Ward based on Gallegos' arrest in Guymon, the defendant testified as a government witness against John Ward. A transcript of defendant's testimony in that trial, which occurred on October 2, 2001, is part of the record in the instant case. In his testimony in the Ward trial, the defendant admitted that he was a long-term drug dealer and on many occasions had dealt with Ward in various capacities in drug deals. He also admitted that he had "encouraged" Laura Gallegos to transport from New Mexico to Kansas the cocaine found in her car when she was stopped and arrested in Guymon, Oklahoma. Further, he admitted that in connection with that particular delivery he had received money from Ward, some $17,000 to $18,000, which he in turn relayed to Gallegos.

In this appeal, defendant's counsel asserts that the district court, in determining defendant's offense level, erred in including in his calculations thereof the drugs found in Gallegos' vehicle when she was stopped in Guymon, Oklahoma.[3] Counsel's position is, in effect, that the defendant was not "legally involved" in the drug transaction occurring

_____

[3]Trial counsel initially objected to this matter in the district court, but, at sentencing, withdrew the objection.

on January 31, 2000, when Gallegos was stopped in Guymon, Oklahoma. In this regard, defendant's testimony in the Ward trial, which occurred on October 2, 2001, demonstrates that he was, at the least, a "conspirator" in that particular transaction and probably an aider and abetter. As is evidenced by defendant's testimony at the Ward trial, he was very definitely a "part" of that transaction and was not, as is suggested, an "innocent bystander."

In connection with "relevant conduct," in *United States v. Hishaw*, 235 F.3d 565, 577 (10th Cir. 2000), we spoke, citing *United States v. Meshack*, 225 F.3d 556, 576 (5th Cir. 2000), as follows:

> It is well-settled in this circuit that a sentencing court may look beyond the offense of conviction and "may consider quantities of drugs not alleged in calculating a defendant's base offense level, provided the drugs were part of the same course of conduct or common scheme or plan as the offense of conviction." (quoting *United States v. Roederer*, 11 F.3d 973, 978 (10th Cir. 1993).

### III. Voluntary Plea

Counsel frames the third and final issue on appeal as whether defendant's plea of guilty was made "knowingly and voluntarily." In this regard, counsel asserts that the defendant, in connection with his plea bargain, "understood that the government would recommend a sentence which was one-half the low end of the guideline range." As indicated, the guideline range for the defendant was 262 months to 327 months imprisonment. One half of 262 is 131 months, and the defendant was sentenced to 240

months.

In the district court, neither defendant nor his counsel made a request to withdraw the guilty plea. Hence, we again review for "plain error." Counsel does not ask that we vacate defendant's change of plea, she only asks that we remand to the district court to hold a hearing on the voluntariness of defendant's change of plea. In our view, the record before us does not support the argument.

At the change of plea hearing, the government agreed, *inter alia*, to file a motion for downward departure pursuant to USSG § 5K1.1 if the "defendant provides the government with substantial assistance." In the course of that same hearing, the district court asked defendant if "anyone had predicted or promised to you what the sentence would be in this case?" To which query the defendant answered "No, sir."

Pursuant to the plea agreement, the government did file a motion for downward departure and recommended that defendant's imprisonment be for 240 months.

Consistent therewith, at the trial of John Ward, where the defendant testified as a government witness, defendant was questioned extensively as to what sentence might ultimately be imposed. In that colloquy, the defendant was asked "what is your understanding of a sentence that you are looking at in this case," to which defendant stated "I signed a plea bargain for 20 years," which is the sentence ultimately imposed. We find nothing in the record to support the contention made in this Court, for the first time, that he was promised a sentence of 131 months.

In sum, all of the issues raised in this court were not raised in the district court. None, in our view, amount to "error," let alone "plain error" that "affects substantial rights" and that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. James*, 257 F.3d at 1182; *United States v. Hishaw*, 235 F.3d 565, 574 (10th Cir. 2000); *Manning v. United States*, 146 F.3d 808, 812, (10th Cir. 1998).

Judgment Affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge