**F I L E D**

**UNITED STATES COURT OF APPEALS**

**August 19, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LANE LELAND LARSON,

Defendant-Appellant.

No. 04-4030
(D.C. No. 2:03-CR-383-PGC)
(Utah)

## ORDER AND JUDGMENT[*]

Before **SEYMOUR**, **HARTZ**, and **McCONNELL**, Circuit Judges.

Lane Leland Larson pled guilty to a one count indictment, admitting he

possessed 2.88 grams of pseudoephedrine with intent to manufacture

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. At sentencing,

the district court adjusted Mr. Lane's base offense level pursuant to U.S.S.G. §

2D1.1(b)(5)(C) based on its finding that his offense "created a substantial risk of

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

harm to the life of a minor." Mr. Larson maintains that we should vacate his sentence because the court's use of § 2D1.1(b)(5)(C) to enhance his sentence violates his Sixth Amendment right to have a jury determine beyond a reasonable doubt facts which support his sentence. We affirm.

The initial presentence report (PSR) calculated Mr. Larson's base offense level at 18 and recommended a three-point reduction for acceptance of responsibility. Aplt. Br. Attach. 4, at 4. It did not include a recommendation for an enhancement pursuant to § 2D1.1(b)(5)(C). Based on a criminal history category of VI and a total offense level of 15, Mr. Larson's applicable guidelines range was 41 to 51 months imprisonment. *Id*. at 15. The government objected to the initial PSR based on the lack of an enhancement for "the manufacture of methamphetamine by the defendant [that] created a substantial risk of harm to a minor pursuant to U.S.S.G. § 2D1.1(b)(5)(C)." *Id*. Attach. 5, at 1.

"After receiving additional investigative materials, including cleanup information and crime scene photographs, and discussing the application with counsel, the probation office agree[d] with the government," and applied the enhancement. *Id*. The addition of this enhancement elevated Mr. Larson's total offense level to 27, *id*. Attach. 6, at 4, resulting in an applicable guideline range

of 130-162 months imprisonment.  *Id*. at 15.[1]  Mr. Larson objected to the enhancement, contending the government did not prove by clear and convincing evidence that his offense conduct actually created a substantial risk of harm to his minor child.

At sentencing, the government elicited testimony from Officer Mike Renckert, a law enforcement agent who participated in the investigation of Mr. Larson.  Rec., vol. II at 7.  Officer Renckert testified that he was employed by Utah's Adult Probation and Parole Office and in that capacity had gone to visit Mr. Larson, who resided with his parents.  *Id*.  Mr. Larson's parents allowed the agents to enter their home and reported that their son was not there but that he resided in the basement.  As Officer Renckert entered the stairway to the basement, he was confronted with what he described as a "metallic-type smell in the air" that "you can actually taste," an odor typical to methamphetamine labs.  *Id*. at 7-8.

Mr. Larson crossed paths with Officer Renckert as the agent was coming down the stairs.  *Id*. at 9.  He told the agent his bedroom was the room on the right-hand side of the basement hallway.  *Id*.  Officer Renckert testified that he

---

[1]The district court applied a two-level downward departure for exceptional post-offense rehabilitative efforts, resulting in an offense level of 25 and a guideline range of 110-137.  It sentenced Mr. Larson to 110 months imprisonment.

examined that room and there were no personal effects in it to show it was Mr. Larson's. *Id.* The officer then witnessed Mr. Larson's three year old son coming down the hallway. *Id.* at 10. The little boy told Officer Renckert that "he spent the night with his father and that he was sleeping in the room to the left." *Id.* Officer Renckert entered the bedroom on the left-hand side of the hallway and observed various items indicative of methamphetamine production including Red Devil Lye, muriatic acid, propane, acetone, a torch, a Coleman stove, a hotplate, and red phosphorous residue. *Id.* at 11-12, 43. He also noticed the lab was in close proximity to the home's water heater and furnace, creating a risk of combustion. *Id.* at 14. During Mr. Larsen's testimony, he conceded that his son slept in the basement, but he maintained that his son neither entered nor slept in the bedroom where the meth lab was located. *Id.* at 32-33.

The district court held that the § 2D1.1(b)(5)(C) enhancement was applicable to the defendant's offense conduct. *Id.* at 43. The court based its decision on the following findings, applying a "clear and convincing" standard of proof: (1) Mr. Larson's child believed that the room where the methamphetamine laboratory was located was his bedroom; (2) the items found in that room were dangerous and could have attracted the child's attention; (3) even if the child did not sleep in the room with the methamphetamine laboratory, he easily could have wandered into the room and found the dangerous substances; and (4) the vapors

-4-

that were accumulating from the lab could have posed a risk of an explosion in the basement of the home. *Id.* at 42-44.

Mr. Larson contends the district court's application of the enhancement to his sentence constitutes a violation of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), because the Sixth Amendment requires any fact that increases a defendant's penalty beyond the statutory maximum to be proved to a jury beyond a reasonable doubt. Subsequent to briefing in the instant appeal, the Supreme Court extended *Blakely* to the federal sentencing guidelines, holding the Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 125 S. Ct. 738, 756 (2005). To remedy the guidelines' Sixth Amendment violation, the Court made the guidelines advisory in all cases. *Id.* at 757. In addition, the Court expressly stated that its "remedial interpretation of the Sentencing Act" must be applied "to all cases on direct review." *Id.* at 769.

Because Mr. Larson did not raise his Sixth Amendment argument in the district court, we review his claim for plain error. FED. R. CRIM. P. 52(b); *see also United States v. Dazey*, 403 F.3d 1147, 1173-74 (10th Cir. 2005). To establish plain error, Mr. Larson must demonstrate there was (1) error (2) that is

plain and (3) that affected his substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). If he satisfies his burden of establishing the first three prongs of the plain error test, we may exercise our discretion to correct the error if it "seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 469-70 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)); *Gonzalez-Huerta*, 403 F.3d at 732. We conduct plain error analysis "less rigidly when reviewing a potential constitutional error." *Dazey*, 403 F.3d at 1174 (quoting *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001)).

It is clear after *Booker* that Mr. Larson's Sixth Amendment rights were violated when his sentence was increased based on facts found by the judge. It is well established that constitutional *Booker* error satisfies the first two criteria for plain error review. *Id.* at 1174-75. Our analysis turns, then, on the third and fourth criteria.

An error that violates a defendant's substantial rights "must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. Mr. Larson bears the burden of establishing prejudice under the *Olano* test. *Gonzalez-Huerta*, 403 F.3d at 733. He must show "a reasonable probability that, but for [the error claimed], the result of the

proceeding would have been different." *United States v. Dominguez Benitez*, 124 S. Ct. 2333, 2339 (2004). In a case involving constitutional *Booker* error, we have held that a defendant may satisfy the burden in at least two ways:

> First, if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence, then the defendant successfully demonstrates that the error below affected his substantial rights . . . . Second, a defendant may show that the district court's error affected his substantial rights by demonstrating a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guidelines range.

*Dazey*, 403 F.3d at 1175 (footnote omitted).

Before the district court, Mr. Larson did not introduce any affirmative evidence which supports either of these contentions. Indeed, he did not controvert the agent's testimony that his son was in close proximity to toxic and potentially lethal substances when the agents arrived to investigate the methamphetamine laboratory. Moreover, it is undisputed that Mr. Larson's son generally spent time in the basement where there was a risk of an explosion due to the vapors that were accumulating from the methamphetamine laboratory. These facts alone defeat the contention that a jury applying a reasonable doubt standard would not have found the same material facts the judge found by clear and convincing evidence. Mr. Larson also points to nothing in the record indicating that the district court would reasonably impose a sentence outside the guideline

-7-

range.  As a result, we conclude that judicial fact-finding did not affect Mr. Larson's substantial rights under the third prong of the plain error test.

Even assuming Mr. Larson could show that the sentencing error affected his substantial rights, he has not met his "burden of persuading us that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings," *United States v. Mozee*, 405 F.3d 1082, 1091 (10th Cir. 2005), thereby failing to satisfy the fourth prong of plain error review.  In the context of a constitutional *Booker* error, "the question before us is whether a reversal and remand for resentencing by the district court under a discretionary guidelines regime would advance the fairness, integrity, or public reputation of the courts." *Id*.  It cannot be said that sentencing a defendant in accordance with a guideline range supported by facts he testified to at the sentencing hearing would undermine the fairness, integrity, or public reputation of the courts.  For the aforementioned reasons, we **AFFIRM**.

SUBMITTED FOR THE COURT

Stephanie K. Seymour
Circuit Judge