**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOE COBOS,

Defendant - Appellant.

No. 02-2222

(D.C. No. CR-00-1424-JC)

(D. New Mexico)

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ARTURO NATERA,

Defendant - Appellant.

No. 02-2237

(D.C. No. CR-00-1424-JC)

(D. New Mexico)

**ORDER AND JUDGMENT** *

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **EBEL**, **ANDERSON**, and **HARTZ**, Circuit Judges.

———————————————

This Order and Judgment consolidates for disposition the appeals in United States v. Cobos, No. 02-2222, and United States v. Arturo Natera, No. 02-2237. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of either appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

Defendants Arturo Natera (Arturo) and Joe Cobos (Cobos) were arrested for their participation in a drug-distribution conspiracy and charged in a fifteen-count indictment along with twelve other individuals. They were convicted after a jury trial on charges of (1) conspiracy to possess with intent to distribute methamphetamine, marijuana, and cocaine, and (2) manufacturing methamphetamine within one thousand feet of a school. In addition, Arturo was convicted of possession with intent to distribute less than fifty kilograms of marijuana, and Cobos was convicted of possession with intent to distribute less than fifty grams of methamphetamine. Arturo was sentenced to imprisonment of 360 months on the first two charges and sixty months on the third. Cobos was sentenced to imprisonment of 360 months on the first two charges and 240 months on the third.

Defendants' appeals raise the same three arguments: (1) that they are entitled to resentencing under Apprendi v. New Jersey, 530 U.S. 466 (2000); (2) that there was insufficient evidence to convict them of manufacturing methamphetamine within one thousand feet of a school; and (3) that they received ineffective assistance from their respective trial attorneys. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm in each case.

## I. BACKGROUND

### A. Underlying Facts

Arturo was the head of a drug trafficking conspiracy based in Roswell, New Mexico, from 1997 until October of 2000. Four members of the conspiracy —among other witnesses—testified against him at trial. Abel Juaregi, Arturo's partner in a car sales lot, testified about Arturo's involvement in bringing large quantities of marijuana, cocaine, and methamphetamine to Roswell. Jeannine Sena, Arturo's girlfriend, testified about accompanying him to Texas to pick up cocaine and to Mexico to purchase marijuana. Leta Quesada, Jeannine's mother and a veteran narcotics transporter, testified about obtaining two kilograms of cocaine and 80 pounds of marijuana for Arturo. James Bruce Henry (Henry), a methamphetamine cook, testified that he manufactured methamphetamine for Arturo and his brother, Marcos Natera (Marcos).

Cobos was involved in Arturo's drug distribution scheme. Juaregi testified that he would purchase drugs from Cobos when Arturo had none to sell him. He also testified that Cobos was Arturo's primary conduit for selling illegal drugs. Cobos, he said, ran Arturo's drug trafficking operation while Arturo was in prison.

In April of 2000, Marcos was arrested after police in Tennessee found marijuana hidden in a pickup truck he was driving. While in jail awaiting release on bond, Marcos met Henry, who was charged with manufacturing methamphetamine. Marcos told him that he was looking for a methamphetamine cook, and Henry volunteered to return to Roswell with him. Upon arriving in Roswell, Henry and his girlfriend stayed at Marcos's apartment, and then moved into a house at 1418 East Tilden Street, which was owned by Arturo. The house was within 1000 feet of Mesa Middle School.

Henry manufactured methamphetamine in the house's garage for three to four weeks, but wished to move the operation in anticipation of having his children join him in Roswell. Marcos suggested moving the methamphetamine lab to the countryside, and Cobos told them that he had a travel trailer that they could use. Cobos and Henry retrieved the trailer, but rather than moving the operation outside of Roswell, the trailer remained adjacent to the Tilden Street

house until Henry's arrest. Henry never lived in the trailer and used it only for manufacturing methamphetamine.

By Henry's estimates, he manufactured four or five pounds of methamphetamine while residing at the Tilden Street house. He testified that he supplied methamphetamine to Defendants for their personal use, and also that he gave Cobos methamphetamine to "get rid of" for him. In addition, Henry testified that Arturo gave him $500 to purchase pseudoephedrine pills for use in the manufacture of methamphetamine, and that he gave Arturo two ounces of methamphetamine in return. According to Henry, he also gave Arturo an ounce of methamphetamine in lieu of paying rent on the house.

As discussed in United States v. Ramirez, 348 F.3d 1175, 1178 (10th Cir. 2003), the conspiracy ultimately attracted the attention of state and federal law enforcement agencies in late 1999 and early 2000. Their investigation included the use of undercover agents and wiretaps on two of Arturo's cellular telephones. On October 27, 2000, a federal grand jury handed down a fifteen-count indictment charging Defendants and twelve others with conspiracy and other drug offenses.

**B. Proceedings Below**

Four counts of the indictment are relevant to these appeals. In Count I Defendants and others were charged with conspiring, in violation of 21 U.S.C. § 846, to commit the following crimes:

Possession with intent to distribute 50 grams and more of methamphetamine . . . contrary to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A); possession with intent to distribute 100 kilograms and more of marijuana . . . contrary to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B); and possession with intent to distribute less than 500 grams of cocaine . . . contrary to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C).

R., Vol. I, Doc. 31 at 2. Count II charged Arturo, Cobos, and Marcos with "knowingly and intentionally mak[ing] a building or enclosure available for the purpose of unlawfully manufacturing a controlled substance within 1000 feet of a school." R., Vol. I., Doc. 31 at 6. Count IX charged Cobos with "possess[ion] with intent to distribute less than 50 grams of a mixture and substance containing a detectable amount of methamphetamine, its Salts, isomers, and Salts of its isomers . . . ." R., Vol. I, Doc. 31 at 9. Count XIV charged Arturo, among others, with "possess[ion] with intent to distribute less than 50 kilograms of Marijuana . . . ." R., Vol. I, Doc. 31 at 11.

The jury convicted Defendants on all counts. On a special verdict form, the jury found that the objectives of the conspiracy to which Defendants agreed involved methamphetamine, marijuana, and cocaine. As to Arturo, it found that the amount of methamphetamine and marijuana "involved in the scope of the conspiracy" included: "50 grams and more (pure methamphetamine)," and "100 kilograms and more" marijuana. R., Vol. I, Doc. 319 at 2. As to Cobos, it found that the conspiracy involved "[l]ess than 50 grams, but more than 5 grams (pure

-6-

methamphetamine),” and “[a]t least 50 kilograms, but less than 100 kilograms” marijuana. Id. at 8. Defendants were sentenced to 360 months’ imprisonment on Counts I and II. Arturo received 60 months’ imprisonment on Count XIV, and Cobos received 240 months’ imprisonment on Count IX.

Defendants timely appealed. Their respective attorneys filed briefs in accordance with Anders v. California, 386 U.S. 738 (1967), asserting that after reviewing the record, they could discern no meritorious basis for appeal. Defendants subsequently filed pro se appellate briefs, and the United States, upon the order of this Court, responded. Cobos then filed a reply brief.

## II. ANALYSIS

### A. Apprendi

Defendants contend that the district court’s imposition of 360-month sentences for their convictions on Counts I and II was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000). Neither of them, however, raised such an argument before the district court. Therefore, we review for plain error the sentences that the district court imposed. Under this standard, Defendants must demonstrate: “(1) an error; (2) that is plain or obvious; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings.” United States v. James, 257 F.3d 1173, 1182

(10th Cir. 2001). Although "we apply this rule less rigidly when reviewing a potential constitutional error," id., we can find no <u>Apprendi</u> violation here.

Defendants may assert a claim under <u>Apprendi</u> only if the district court imposed a sentence in excess of the statutory maximum for the offense of which they were convicted. <u>See, e.g.</u>, <u>United States v. O'Flanagan</u>, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003). This was not the case here. As to Count I, the jury found Defendants guilty under 21 U.S.C. § 846 of conspiring to possess with intent to distribute methamphetamine, marijuana, and cocaine, in violation of 21 U.S.C. § 841(a)(1). According to 21 U.S.C. § 846, "Any person who . . . conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." The jury returned special verdict forms finding that possession with intent to distribute methamphetamine, marijuana, and cocaine were objects of the conspiracy. The jury also found by special verdict that as to Arturo, the conspiracy involved "50 grams and more (pure methamphetamine)," R., Vol. I, Doc. 319 at 2, and as to Cobos, the conspiracy involved "[l]ess than 50 grams, but more than 5 grams (pure methamphetamine)," id. at 8. Hence, as to the methamphetamine alone, Arturo faced a sentence as severe as life imprisonment, <u>see</u> 21 U.S.C. § 841(b)(1)(A)(viii), and Cobos faced as much as forty years' imprisonment, <u>see</u> 21 U.S.C. § 841(b)(1)(B)(viii).

As to Count II, the jury convicted Defendants of violating 21 U.S.C. §§ 856(a)(2) and 860(a). Section 856(a)(2) makes it unlawful to:

> manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

Their sentences were enhanced under Section 860(a), which provides:

> Any person who violates . . . section 856 of this title by . . . manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school . . . is . . . subject to (1) <u>twice the maximum punishment authorized by section 841(b)</u> of this title . . . .

(emphasis added). Even under 21 U.S.C. §841(b)(1)(C), which provides the most lenient sentence for the manufacture of a schedule II controlled substance such as methamphetamine, Defendants were eligible for a sentence of 20 years' imprisonment. Once this sentence is doubled under 21 U.S.C. § 860(a), Defendants faced up to forty years' imprisonment.

Thus, the district court did not err, let alone plainly err, under <u>Apprendi</u> by imposing sentences (30 years) well within the statutory range for each conviction.

**B. Sufficiency of Evidence**

Defendants contend that the district court improperly denied their motions for judgment of acquittal on Count II of the indictment because the government

presented insufficient evidence to convict them of making available a building or enclosure for the manufacture of methamphetamine within 1000 feet of a school. Specifically, Defendants contend that the government did not prove beyond a reasonable doubt (1) that they knew that Bruce Henry used the travel trailer to manufacture methamphetamine; (2) that Henry produced 50 grams or more of methamphetamine in the trailer; or (3) that the trailer was within 1000 feet of a school.

"We review de novo the district court's denial of a motion for a judgment of acquittal," viewing "all the evidence in the light most favorable to the government." United States v. Ramirez, 348 F.3d at 1180 (internal quotation marks omitted). "We must determine whether there is evidence from which a jury could find the defendant guilty beyond a reasonable doubt," but "[w]e do not . . . weigh the evidence or consider the credibility of the witnesses in making our determination." Id. (internal quotation marks and brackets omitted).

Defendants' arguments are without merit. As for Defendants' knowledge that the trailer was used for the manufacture of methamphetamine, Henry testified that because his children were to join him in Roswell at the Tilden Street house, he discussed with Marcos the possibility of moving the manufacturing operation. Marcos suggested getting a piece of land in the country. Cobos, who was present during this discussion, volunteered a travel trailer and later took Henry to retrieve

it. But rather than setting up the trailer somewhere in the country, it remained next to the house, where it was used exclusively for manufacturing methamphetamine. Henry testified that he gave both Defendants methamphetamine for their personal use, and that he gave Cobos some to "get rid of," R., Vol. XI at 317:15. He also testified that he gave Arturo two ounces of methamphetamine made from pseudoephedrine pills paid for by Arturo, and one ounce in lieu of rent. From this, a jury could conclude beyond a reasonable doubt that each Defendant knew that Henry used the trailer to manufacture methamphetamine.

With respect to the amount of drugs manufactured, Defendants claim that the government's evidence was insufficient to prove beyond a reasonable doubt that Henry manufactured more than 50 grams of methamphetamine in the trailer. As an initial matter, we are uncertain why Defendants believe that the government was required to prove as an element of the crime that any benchmark amount of methamphetamine was manufactured in the trailer. As discussed above, the district court sentenced them to thirty years' imprisonment, well within the range permitted under 21 U.S.C. § 841(b)(1)(C), as enhanced by 21 U.S.C. § 860(a). Thus, the government was not required to charge in the indictment, and prove to the jury beyond a reasonable doubt as an element of the offense, that Henry

manufactured a given benchmark amount in the trailer. See United States v. Jones, 235 F.3d 1231, 1236 (10th Cir. 2000).

Furthermore, even if the government was required to produce evidence that Henry manufactured more than 50 grams of methamphetamine in the trailer, it met this burden. Although Henry's estimates of the total amount of methamphetamine that he manufactured varied during the course of his testimony, all estimates exceeded one pound. He also estimated that in each batch he manufactured between one and three ounces. Because 50 grams is less than two ounces, this testimony clearly sufficed.

As for the distance between the trailer and the school, Agent Eric Brackeen of the Roswell Police Department testified that he used a "roll-a-tape device" to measure the distance. He testified that the trailer was adjacent to the house at 1418 East Tilden Street in Roswell. Starting on the sidewalk to the west of that address, he proceeded east along East Tilden Street to Hinkel Street, then southeast on Hinkel to the sidewalk of Mesa Middle School, and then on to the back door on the northwest side of the school. The distance measured 628 feet, 11 inches. He then "reset the measurement and took it back to see if it was going to be in close proximity and it was about 11 inches off, is all. It was 628 feet from the back of the school door back to the beginning of the residence." R., Vol. XI at 215: 22-25. He also testified that the measurement "as the crow flies"

would have been less than 628 feet.  From this testimony the jury could conclude beyond a reasonable doubt that the trailer in which Henry manufactured methamphetamine was within 1000 feet of a school.

### C.  Ineffective Assistance of Counsel

Finally, Defendants contend that they received ineffective assistance of counsel because their attorneys did not object to the presentence report on which their sentences were based.  Defendants argue that they were especially prejudiced by their attorneys' failure to object to the government's evidence of their knowledge that methamphetamine was being manufactured, the distance between the methamphetamine lab and the school, and the quantity of drugs manufactured.

As a general rule, "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal.  Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). Requiring ineffective assistance claims to be brought on collateral attack allows the district court to create a factual record, if necessary, on the issue of ineffective assistance.  It also gives "counsel accused of deficient performance" the opportunity to "explain their reasoning and actions, and the district court can render its opinion on the merits of the claim."  Id.

We do not depart from the general rule in this case and dismiss this claim as premature.

## III.  CONCLUSION

We AFFIRM the judgments in Nos. 02-2222 and 02-2237.  The motions to withdraw by Defendants' appellate attorneys are GRANTED.  Arturo Natera's motion for appointment of counsel is DENIED.  We construe Cobos's reply brief as a motion for appointment of counsel; this motion is also DENIED.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge