**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOHN SPENCER HURT,

      Defendant-Appellant.

No. 04-8026
(D.C. No. 03-CR-64-J)
(WYOMING)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Circuit Judge**, McWILLIAMS**, Senior Circuit Judge, and **HENRY**, Circuit Judge.

In a two-count indictment filed on March 19, 2003, in the United States District Court for the District of Wyoming, John Spencer Hurt (defendant) was charged with conspiring from January, 2000, to December 1, 2001, with Laurencio and Martin Jimenez-Oliva, and others, to unlawfully possess with an intent to distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and, in a second count, that, while managing and controlling a building at 948 North Park Street, in

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Casper, Wyoming, as the owner or agent thereof, he did knowingly make available for use of a room therein for the purpose of unlawfully storing, distributing or using methamphetamine in violation of 21 U.S.C. § 856(a)(2). Defendant pled not guilty to both counts. On January 9, 2004, after a five-day trial, a jury returned a verdict acquitting him on the first count (conspiring), but convicting him on the second count (managing a building for the purpose of drug storage or distribution). A pre-sentence report set defendant's guideline range for imprisonment at 70 to 87 months, and the defendant was then sentenced to imprisonment for 77 months.

At trial, the defendant was represented by retained counsel, and in this appeal he is also represented by retained – though different – counsel. On appeal, counsel asserts three grounds for reversal: (1) insufficient evidence to support a conviction of the defendant for a violation of 21 U.S.C. § 856(a)(2); (2) improper jury instructions; and (3) improper sentence. We shall discuss each seriatim.

## Sufficiency of the Evidence

In determining whether there is sufficient evidence to support a jury's verdict, in *United States v. Scull,* 321 F.3d 1270, 1282 (10th Cir. 2003), we spoke as follows: "this court must review the record *de novo* and ask only whether, taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in a light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt . . . . [W]hile the evidence supporting the conviction

must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt."

As indicated, the jury acquitted the defendant on Count 1, but convicted him on Count 2, which was based on 21 U.S.C. § 856(a)(2). That statute reads as follows:

§ 856. Establishment of manufacturing operations

(a) Except as authorized by this subchapter, it shall be unlawful to–

　　(1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance;
　　(2) manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

(b) Any person who violates subsection (a) of this section shall be sentenced to a term of imprisonment of not more than 20 years or a fine of not more than $500,000, or both, or a fine of $2,000,000 for a person other than an individual.

Defendant, an alcoholic and drug user himself, was the owner and controlling manager of a small four-unit apartment house at 948 North Park Street, Casper, Wyoming. Counsel apparently concedes, for the sake of argument only, that Apartment 4 was, at the time here involved, being used for purposes of storing and distributing methamphetamine. One Martin Jimenez-Oliva began renting that particular apartment in

early March, 2000, and he resided there for a year. He was followed in that apartment by his brother, Laurencio Jimenez-Oliva, and still later by Angel Contreras and one Miguel Chavarin, who was occupying the apartment with his wife and children on October 4, 2001, when he was arrested. One or more of these individuals maintained continuous occupancy as tenants and patrons of the defendant's premises at 948 North Park Street in Casper during 2000 and 2001.

The record indicates that during much of 2000 and into 2001, the Drug Enforcement Agency and local Wyoming law enforcement agencies were investigating a methamphetamine distribution ring located at 948 North Park Street in Casper and led by Martin Jimenez-Oliva. As previously stated, counsel's position apparently is that Martin Jimenez-Oliva and his associates may well have been storing and distributing methamphetamine out of Apartment 4, but that the defendant did not "knowingly rent" Apartment 4 for the purpose of storing or distributing methamphetamine. In this regard, there was testimony by law enforcement officers that the defendant, upon arrest, admitted that on several occasions the "rent" given him for Apartment 4 was in the form of "half-ounce quantities of methamphetamine from the Jimenez-Oliva brothers in lieu of the $200 rent." Further, the defendant told the arresting officers that on at least four other occasions, he purchased one-ounce quantities of methamphetamine from the Jimenez-Oliva brothers for the price of $600 to $700 per ounce. The foregoing, to us, would permit the inference that the defendant "knew" that drug activity was being conducted out

of Apartment 4. And there is other evidence, both direct, i.e. from an "insider," and circumstantial, that defendant knew Apartment 4 was being used for illegal purposes, i.e., operating a drug distribution activity.[1] In short, in our view, the record amply supports the jury's verdict that defendant knew that Apartment 4 was being used by others for illegal drug activity, and that the defendant continued to rent the premises to them.

Improper Instructions

Appellate counsel, who, as we said earlier, was not trial counsel, suggests, on appeal, that the instructions given the jury were inadequate. When, on appeal, jury instructions are challenged, we review the instructions as a whole to determine whether they correctly and adequately state the governing law and provide the jury with an ample and accurate understanding of the issues to be resolved by the jury. *United States v. Wittgerstein*, 163 F.3d 1164 (10th Cir. 1998).

Our study of the present record leads us to conclude that the instructions given the jury were both correct and adequate. For example, in Count 2 of the indictment, the defendant was charged with knowingly and intentionally making available for use a room

---

[1] In *United States v. Cobos*, 2004 WL 296971, at *4 (10th Cir. 2004), the defendant was charged, *inter alia,* with "making available a building or enclosure for the manufacture of methamphetamine within 1000 feet of a school." One Henry, who used the defendant's trailer to manufacture methamphetamine within 1000 feet of a school, testified that he once gave the defendant "two ounces of methamphetamine," which defendant paid for and, on the same occasion, gave him one ounce of methamphetamine "in lieu of rent." In that case, we affirmed the defendant's conviction, holding that the evidence was sufficient to show that the defendant "knew" his trailer was being used to manufacture and distribute methamphetamine.

in an apartment which he owned for the purpose of unlawfully "storing, distributing, or using methamphetamine." (The count did not allege that methamphetamine was being manufactured in the room.) In this regard, the district court instructed the jury as follows:

> In order to sustain its burden of proof for the crime of managing and controlling an establishment for the purpose of storing, distributing, or using a controlled substance as charged in Count 2 of the indictment, the Government must prove the following essential elements beyond a reasonable doubt: One, the defendant, John Spencer Hurt, managed and controlled a building at 948 North Park Street, Casper, Wyoming. Two, the defendant, John Spencer Hurt, did so as the owner or agent. And, three, the defendant, John Spencer Hurt, knowingly and intentionally made available for use, with or without compensation, the building located at 948 North Park Street, Casper, Wyoming, for the purpose of unlawfully storing, distributing, or using methamphetamine.
>
> If the Government fails to prove any of these elements of proof beyond a reasonable doubt, you should find the defendant not guilty. If, on the other hand, the Government proves each of the elements by proof beyond a reasonable doubt, you should find the defendant guilty.
>
> *   *   *   *   *
>
> Actual knowledge on the part of the defendant that he was renting, leasing, or making available for use the building, room, or enclosure for the purpose of unlawfully storing, distributing, or using a controlled substance is an essential element of the offense charged. You may not find the defendant guilty unless you find beyond a reasonable doubt that he knew that he was renting, leasing or making available for the use the building, room, or enclosure for the purpose of unlawfully storing, distributing, or using a controlled substance. It is not sufficient to show that the defendant may have suspected or thought the building, room, or enclosure was being used for such purposes.

- 6 -

In our view, the foregoing instruction on the essential elements of the crime charged in Count 2 of the indictment was correct and adequate. *See United States v. Scull,* 321 F.3d at 1284. The instructions as given, when considered as a whole, are most adequate.[2]

## Improper Sentence

The district court sentenced the defendant under the United States Sentencing Guidelines. Pursuant to U.S.S.G. §2D1.1(c)(7), the pre-sentence report set defendant's base offense level at 26, since, including relevant conduct, the "offense involved at least 50 grams but less than 200 grams of methamphetamine." Defense counsel objected to that recommendation of the probation department, contending that the base offense level should be 12, and not 26, since the "offense involved" did not involve "50 to 200 grams of methamphetamine," but only involved less than 2.5 grams of methamphetamine. The district court followed the pre-sentence investigative report and set defendant's base offense level at 26, which, when accompanied by a Criminal History of II, set defendant's

---

[2]Counsel, in his brief and at oral argument, argues that there is a "real difference" between 21 U.S.C. §§ 856(a)(1) and 856(a)(2). We agree. However, defendant was not charged under (a)(1). He was charged under (a)(2). *United States v. Chen,* 913 F.2d 183 (5th Cir. 1990), relied on by counsel, is not particularly helpful. That case, as we read it, held that a "deliberate indifference" instruction was improper under (a)(1), but was proper under (a)(2). Our defendant was not charged under (a)(1). We recognized this distinction urged here by counsel in *United States v. Verners,* 53 F.3d 291, n.4 (10th Cir. 1995), where we said, "Congress did intend to punish those who knowingly allow others to use their property to run drug operations. However, this intent is expressed in 21 U.S.C. §856(a)(2), not (a)(1)."

guideline range at 70 to 87 months imprisonment and, as earlier indicated, defendant was sentenced to imprisonment for 77 months. If defendant's base offense level had been set at 12, as counsel contended it should have been, with defendant's criminal history of Category II, the guideline range would have been 12 to 18 months.

In his brief in this court, defendant's counsel argues that defendant's sentencing was improper under *Blakely v. Washington,* 124 S.Ct. 2531 (June 24, 2004). *Blakeley* was not raised in the district court for good reason, i.e., defendant was sentenced prior to the date the Supreme Court announced *Blakely.* Subsequent to the briefing in this case, the Supreme Court decided *United States v. Booker-Fanfan,* 125 S.Ct. 738 (Jan.12, 2005)*.* In *Booker*, the Supreme Court held, *inter alia,* that any "fact" which enhances the sentence a defendant would have received if such "fact" had not been found, must, under the Sixth Amendment, be "found" by a jury, and not by a judge. In *Fanfan*, the Supreme Court held that the Sentencing Guidelines were not "mandatory," but were only "advisory." Under the described chronology, in our review of the propriety of defendant's sentence, we are governed by the law as it exists at the time of our review, and not as it may have existed prior to *Booker-Fanfan*. In this regard, in *United States v. Lott,* 310 F.3d 1231, 1238 (10th Cir. 2002), where the defendant's conviction and sentence predated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), we said that: "[w]e apply *Apprendi* to cases pending on direct review," citing *Griffith v. Kentucky,* 479 U.S. 314, 320 (1987).

Clearly, under *Booker-Fanfan,* the appellant's sentence cannot be upheld. The

district court, and not a jury, determined that the offense involved 50 to 200 grams of methamphetamine, which "fact" the defendant did not admit and, in fact, contested. Further, that "fact," i.e., the amount of methamphetamine involved, enhanced defendant's term of imprisonment above the sentence he would have otherwise received, i.e., 77 months instead of 12 to 18 months, and, of course, under *Fanfan* the U.S.S.G. are not mandatory on a trial court and are now only advisory.[3]

We recognize the general rule that matters not raised in the district court will not be considered by us on appeal. We have, however, established an exception to the general rule, i.e. where an appellant meets a so-called "four-prong" test for "plain error," he can raise on appeal a matter that was not raised in the trial court. In *United States v. Burbage*, 365 F.3d 1174, 1180 (10th Cir. 2004), the "four prong" test was stated as follows:

> Because Defendant did not object below to the district court's comments, we review these claims for plain error. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Price*, 265 F.3d 1097, 1107 (10th Cir. 2001).

Our study of the record leads us to conclude that the defendant has met the plain error test, i.e., there was error that was plain and affected substantial rights and affects the

---

[3]In Count 1, the defendant was charged with conspiracy to possess more than 50 grams of methamphetamine, but he was acquitted on that count. Count 2, of which he was convicted, did not allege any specific amount of methamphetamine.

fairness and integrity of the judicial process.  We would add that for us to then take no corrective action would, in our view, further demean the judicial process.  Thus, we have resolved this case on its merits.

Accordingly, we affirm defendant's conviction, but vacate the sentence imposed and remand the case to the district court for re-sentencing consistent with *United States v. Booker-Fanfan.*

Entered for the Court,

Robert H. McWilliams
Senior Circuit Judge